Argued and submitted January 5; reassigned July 8, 1996, decision of the Court of Appeals reversed in part and affirmed in part; judgment of the circuit court affirmed February 21, 1997

Navajo BAKER,
Personal Representative of the Estate of
Timothy B. Baker, Deceased,
*Petitioner on Review /
Respondent on Review,*

*v.*

Woodruff J. ENGLISH, II, M.D.,
*Respondent on Review /
Petitioner on Review.*

(CC 9211-08042; CA A81150; SC S42379, S42428)

932 P2d 57

John Paul Graff, of Graff & O'Neil, Portland, argued the cause for petitioner on review/respondent on review Baker. With him on the briefs was Jeffrey B. Wihtol, Portland.

Janet M. Schroer, of Hoffman, Hart & Wagner, Portland, argued the cause for respondent on review/petitioner on review English. With her on the briefs was Marjorie A. Speirs, Portland.

Before Carson, Chief Justice, and Van Hoomissen, Fadeley, Graber, and Durham, Justices.**

CARSON, C. J.

** Gillette, J., did not participate in the consideration or decision of this case; Unis, J., retired June 30, 1996, and did not participate in this decision.

**CARSON, C. J.**

The issue in this medical malpractice case is whether an erroneous discovery ruling by the trial court constituted prejudicial error, requiring reversal of a judgment in plaintiff's favor. For the reasons that follow, we conclude that the trial court's ruling was not prejudicial and, hence, that reversal is not required.

■     Because a jury rendered a verdict in favor of Timothy Baker (plaintiff), we view the facts in the light most favorable to him.[1] *See Conway v. Pacific University*, 324 Or 231, 233 n 1, 924 P2d 818 (1996) (stating principle). At some time in the 1980s, plaintiff and his wife became infected with Human Immunodeficiency Virus (HIV) and, by 1990, both had developed Acquired Immune Deficiency Syndrome (AIDS). In June 1990, after deciding to find a new treating physician, plaintiff and his wife consulted with Dr. Woodruff J. English, II, M.D. (defendant), an infectious disease specialist. They became defendant's patients in August 1990. Shortly thereafter, plaintiff's wife died of complications from AIDS. Defendant continued to treat plaintiff after the death of plaintiff's wife.

On November 27, 1990, in order to prevent the onset of pneumocystis pneumonia, which commonly infects AIDS patients, defendant prescribed Cotrim, a sulfa-based medication, for plaintiff. Defendant did not inform plaintiff that Cotrim contained sulfa and also did not inform him about the risks of taking Cotrim or about any alternative treatments, despite the fact that defendant's chart indicated that plaintiff was allergic to sulfa.

Plaintiff had a severe allergic reaction to Cotrim and was hospitalized in early December 1990. On December 20, 1990, defendant advised plaintiff and members of plaintiff's family that plaintiff might have only a few weeks to live. Plaintiff then was transported to a hospital in California. After eight months of hospitalization and home nursing care,

---

[1] Timothy Baker died after trial, while this appeal was pending. His personal representative, Navajo Baker, has been substituted as a party.

plaintiff recovered, for the most part, from his allergic reaction to Cotrim.

In November 1992, plaintiff filed this medical malpractice action against defendant, alleging that defendant negligently prescribed Cotrim when he knew or should have known about plaintiff's allergy to sulfa and also that defendant negligently failed to obtain plaintiff's informed consent before prescribing Cotrim. During pretrial discovery, defendant subpoenaed the records of Dr. Drucker, a psychologist who had conducted counseling sessions with plaintiff and his wife beginning in May 1990, and had continued to see plaintiff after the death of plaintiff's wife in August 1990. Plaintiff provided the records to defendant but deleted all references to Drucker's counseling sessions with plaintiff before November 27, 1990. Defendant moved to compel production of that part of Drucker's records, which the judge hearing pretrial motions denied. At the beginning of the trial in June 1993, the trial court judge[2] declined to revisit the discovery issue. After the close of evidence, the jury rendered a verdict for plaintiff and awarded him $104,109.65 in economic damages and $75,000 in noneconomic damages.

Defendant appealed, assigning error to the denial of his motion to compel production of Drucker's records. The Court of Appeals held that the trial court erred when it denied defendant's motion to compel, concluding that the records were discoverable under ORCP 36 B(1).[3] *Baker v. English*, 134 Or App 43, 46-47, 894 P2d 505 (1995). In addressing the issue whether the error was prejudicial or harmless, the court stated:

---

[2] In this opinion, we refer to the judge who presided over the trial as the "trial court judge." The trial court judge was not the same judge who initially denied defendant's pretrial motion to compel production of Drucker's records. We refer to both judges collectively as the "trial court."

[3] ORCP 36 B(1) provides:

"For all forms of discovery, parties may inquire regarding any matter, not privileged, which is relevant to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things, and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

"[T]here is no basis for concluding one way or the other whether [the] denial [of discovery] might have affected [defendant's] trial strategy or the result of the trial. Consequently, we cannot affirmatively conclude that the error was unlikely to have affected the result and cannot hold that it was harmless." *Id.* at 48.

The Court of Appeals then concluded that, upon remand, the case should be limited to the issue of noneconomic damages. *Id.* at 49. One judge dissented, arguing that, although the trial court had erred in denying defendant's motion to compel production, the error was harmless and did not require reversal. *Id.* at 50-52 (De Muniz, J., dissenting).

Both parties petitioned this court for review. Plaintiff argued that the Court of Appeals erred in holding that the discovery ruling was prejudicial error. Defendant argued that the Court of Appeals erred in limiting the issues upon remand. We allowed both petitions and now reverse the decision of the Court of Appeals.

■      Upon review, plaintiff concedes that the trial court erred when it denied defendant's motion to compel production.[4] Consequently, the issues before us now are whether that error was prejudicial and, if so, whether the issues should be limited upon remand. As we shall explain, we conclude that the error was not prejudicial and, therefore, that the Court of Appeals erred when it reversed the judgment in plaintiff's favor.[5]

■      At the outset, it is helpful to clarify the law governing our task in this case. ORS 19.125(2) provides:

"No judgment shall be reversed or modified *except for error substantially affecting the rights of a party.*" (Emphasis added.)

---

[4] That issue is not before us upon review and, accordingly, we do not consider it.

[5] Our disposition of the first issue makes it unnecessary to consider defendant's petition for review, which concerns the second issue, that is, whether the issues should be limited upon remand in the light of *Maxwell v. Port. Terminal RR. Co.*, 253 Or 573, 456 P2d 484 (1969). That decision held that a new trial in a personal injury action "ordinarily should be a new trial on all contested factual issues, regardless of the ability of the parties on appeal to pinpoint error so as to show that the error, if any, may have affected only one issue." 253 Or at 577.

*See Baden v. Sunset Fuel Co.*, 225 Or 116, 120, 357 P2d 410 (1960) (citing ORS 19.125(2) and stating the "familiar precept that not every error entitles a litigant to a new trial but only error which has resulted in prejudice to him"). That statute sets forth the test—whether a trial court's error "substantially affect[ed] the rights of a party"—under which we must determine whether an error requires reversal or modification. A determination that an error did substantially affect the rights of a party within the meaning of ORS 19.125(2) leads to the conclusion that the trial court committed "prejudicial," or "harmful," error, requiring reversal or modification of the trial court's judgment. In contrast, a determination that an error did not substantially affect a party's rights leads to the conclusion that the error was not prejudicial, *i.e.*, was "harmless," and that the judgment shall be affirmed. Thus, the terms "prejudicial error" and "harmless error," as well as similar terms, serve to describe the conclusion that results from our application of the statutory test.

■　　We also note that, in applying ORS 19.125(2), this court often examines whether it is likely that a trial court's error affected the outcome of the case below. For example, in cases in which a trial court's error either did or may have affected the outcome, such as an error concerning a key issue before the jury, this court has concluded that the error substantially affected the rights of a party and, therefore, was prejudicial. The rationale behind such a conclusion is obvious: The rights of an aggrieved party are substantially affected if the outcome either would have or may have been different had the error not occurred.

　　A review of our case law illustrates that principle. In *U.S. National Bank v. Boge*, 311 Or 550, 555, 814 P2d 1082 (1991), the trial court erroneously instructed the jury that, on the defendants' counterclaim, the plaintiff must have presented evidence showing more than mere honesty on its part in order to prove that it had acted in good faith. This court concluded that giving the instruction constituted prejudicial error because "[t]he standard for [the plaintiff's] conduct was the central issue to be decided" and the jury may have reached its verdict based upon the erroneous instruction. *Id.* at 566. Likewise, in *Honeywell v. Sterling Furniture Co.*, 310 Or 206, 211, 797 P2d 1019 (1990), this court held that it was

prejudicial error to instruct the jury about the statutorily mandated distribution of a punitive damages award, despite the fact that the instruction legally was correct. In so holding, the court reasoned that the instruction "encouraged the jury to award punitive damages for a [specific] purpose" and, consequently, that "[o]ffering [the] jury an additional, inappropriate basis for awarding punitive damages harmed the defendant." *Id.* at 211, 212. *See also Brooks v. Bergholm,* 256 Or 1, 6, 470 P2d 154 (1970) (prejudicial error to refuse to give a limiting instruction cautioning the jury against considering the defendant's wealth in determining compensatory damages because the error "related to the amount of damages" and, therefore, the court "[could not] say that it did not affect the jury's verdict"); *Armstrong v. Stegen,* 251 Or 340, 344, 445 P2d 509 (1968) (prejudicial error to submit to the jury a negligence allegation that was not supported by any evidence because doing so required the jury to speculate in reaching its result); *Watson v. Dodson,* 238 Or 621, 623, 395 P2d 866 (1964) (prejudicial error to deny a motion to amend a complaint to conform to the proof because, had the trial court allowed the amendment, additional instructions would have been given that might have affected the jury's consideration of the evidence).

Similarly, this court has concluded that a trial court's error is harmless when such error would not likely have affected the outcome of the case below. For example, in *Smith v. Fields Chevrolet,* 239 Or 233, 396 P2d 200 (1964), this court addressed the issue whether an erroneous, ambiguous jury instruction required reversal of a jury verdict in the plaintiff's favor. After reviewing the challenged instruction in the context of the instructions as a whole, the court stated:

"[W]e are satisfied that the error was not the kind of error that was likely to affect the outcome of the litigation. See ORS 19.125. * * *

"We can find no reason for believing that this jury, which had spent the better part of two days listening to voluminous evidence * * *, was misled by the minor error in the instruction. The issue was clear. If the jury believed the plaintiff's evidence the defendants were liable." 239 Or at 237.

*See also Grover v. Sturgeon*, 255 Or 578, 583, 469 P2d 617 (1970) (harmless error when it was clear from the jury's verdict that the trial court's failure to grant a motion for directed verdict did not affect the verdict).[6]

■ The case law summarized above demonstrates that an inquiry into the likelihood whether a trial court's error affected the outcome of the case below can serve as a useful tool in determining whether the error resulted in prejudice to a party. However, that inquiry, albeit helpful in some cases, is not the test for determining prejudice. Rather, our focus in this and all similar cases is the statutory test set forth in ORS 19.125(2): "No judgment shall be reversed or modified *except for error substantially affecting the rights of a party*."[7] (Emphasis added.) That is the only statutorily mandated test for determining whether an error requires reversal. Our task

---

[6] We note, however, that this court has developed a narrow exception to the general principle that a party's rights ordinarily are not substantially affected by an error that likely did not affect the outcome of the case. In *Highway Commission v. Walker et ux*, 232 Or 478, 376 P2d 96 (1962), this court addressed the issue whether a trial court's refusal to permit the plaintiff to exercise a peremptory challenge constituted prejudicial error. In concluding that the error *automatically* was prejudicial, the court adopted the following reasoning:

"*There is no great likelihood that [excusal of the juror] would affect the result*, given the assumption that jurors act reasonably * * *[.] [B]ut since there is no way for a party deprived of his peremptory challenge to show prejudice, there is no sanction to enforce his right unless violation thereof is adjudged automatically prejudicial." 232 Or at 485 (emphasis added; internal quotation marks omitted).

As is clear from that text, this court established a prophylactic, *per se* rule specifically for the purpose of analyzing error pertaining to peremptory challenges. The holding of *Highway Commission* should not be interpreted to reach beyond that context.

[7] Indeed, in many cases, this court has focused upon only that wording and the issue of prejudice in making a determination under the statute. *See, e.g., McBee v. Knight*, 239 Or 606, 609, 398 P2d 479 (1965) (erroneous jury instruction regarding a particular allegation of negligence was harmless error because the instructions as a whole made the issues and law clear to the jury and, therefore, "did not [substantially] affect the * * * rights of the parties"); *Rogers v. Day*, 230 Or 564, 566, 370 P2d 624 (1962) (permitting a certain pleading to be filed was harmless error partially because, by the time of trial, "the pleadings * * * had been so far forgotten by both sides that no one was prejudiced"); *Baden v. Sunset Fuel Co.*, 225 Or 116, 121, 357 P2d 410 (1960) (trial court's error in refusing to receive the initial jury verdict was harmless error because the error did not "result[ ] in any prejudice" to the plaintiff).

here, therefore, is to determine whether the trial court's erroneous discovery ruling *substantially* affected defendant's rights.[8]

■ In their arguments before this court, the parties disagree over how we should apply the test set forth in ORS 19.125(2) in this case. Plaintiff contends that defendant already had possession before trial, through other sources, of essentially equivalent information as that contained in Drucker's records and, consequently, that the denial of access to Drucker's records could not substantially have affected defendant's rights. Defendant, on the other hand, contends that the trial court's ruling substantially affected his rights because he lost the ability to review and analyze all discoverable evidence before making certain strategy decisions, which, in turn, affected his presentation of evidence at trial. As we shall explain, we agree with plaintiff.

■ In the context of this erroneous discovery ruling, the central issue is whether defendant, before trial, already knew or had possession of qualitatively the same information as that contained in the denied discovery. If such information were known before trial through other sources, the denial of discovery could not *substantially have affected* defendant's rights under ORS 19.125(2). That is so because, having already known or been in possession of qualitatively indistinguishable information, defendant could have chosen to pursue or utilize that information in formulating a theory of the case and a strategy of presenting evidence.

Such a focus upon existing knowledge or possession of the information at issue is consistent with our case law. In *Woolsey v. Dunning*, 268 Or 233, 249, 520 P2d 340 (1974), a wrongful death case, this court was asked to determine whether the trial court's error in denying the defendant's pretrial motion for production of slides from the decedent's autopsy constituted prejudicial error. The court concluded that the error was not prejudicial because virtually the same

---

[8] We note that ORS 19.125(2) contemplates that an error below has *affected* the rights of a party. To rise to the level of prejudicial error, however, the error must have affected the rights of a party *substantially*.

information as that contained in the slides either was provided or was available to the defendant before trial. For example, in *Woolsey*, the plaintiff had provided the defendant with the decedent's complete hospital records, including an autopsy report. *Id.* at 249-50. Consequently, the defendant "was not prejudiced as the result of the failure of the trial court to require the production of [the] slides in advance of trial." *Id.* at 250.[9]

Having established an analytical framework, we now turn to the specific facts of this case. Defendant makes two contentions supporting his conclusion that the denial of access to Drucker's records substantially affected his rights, resulting in prejudicial error. First, he contends that Drucker's records would have enabled him to mitigate the award of noneconomic damages in plaintiff's favor because the records demonstrate that plaintiff already was in a fragile emotional state before defendant prescribed Cotrim on November 27, 1990, and, consequently, that defendant's conduct could not have caused *all* plaintiff's emotional damages. Second, defendant contends that he also would have used Drucker's records to challenge plaintiff's credibility.

We have reviewed Drucker's records and agree with defendant that they indicate that plaintiff had emotional problems and was coping with several stressful issues before defendant prescribed Cotrim on November 27, 1990. The records therefore would have been helpful, as defendant contends, to mitigate plaintiff's claim of noneconomic damages.

However, after reviewing the entire trial record, which includes some information that was available to the parties before trial but that was not submitted to the jury in this case, we conclude that defendant already was aware of qualitatively the same information as that contained in Drucker's records, which would have allowed him to pursue the theory of mitigation that he now advances upon review.

---

[9] The court in *Woolsey* also noted that the defendant could have subpoenaed either the pathologist who performed the autopsy or other physicians who had knowledge of the information contained in the slides, and also could have gained access to the slides by subpoenaing them for production at trial. 268 Or at 250. Despite those additional factors, *Woolsey* is helpful to our analysis here because the aggrieved party in that case also had knowledge of the information contained in the denied discovery.

That information either was possessed by or provided to defendant before trial through many sources, including plaintiff's hospital records, plaintiff's deposition, and defendant's own chart notes and deposition. Consequently, the denial of access to Drucker's records did not substantially affect defendant's right to prove all the facts necessary to support his theory of mitigation of noneconomic damages.

As to defendant's contention concerning plaintiff's credibility, we agree that plaintiff's credibility was a central issue in the case, particularly plaintiff's recollection of his November 27, 1990, visit with defendant, when defendant prescribed Cotrim. We disagree with defendant, however, that the trial court's discovery ruling substantially affected his rights in that regard.

Defendant first argues that, according to Drucker's records, plaintiff was undergoing certain emotional stressors that may have affected his memory in late November 1990. In defendant's view, had he seen Drucker's records before trial, he would have challenged plaintiff's credibility by cross-examining plaintiff at his deposition "about the emotional issues that might have affected his memory of events on the date of that discussion" and also by presenting testimony at trial "that directly impacted the central liability issue in the case." We reject defendant's argument because, as discussed above, defendant already had possession of information concerning plaintiff's emotional problems and other similar issues before trial, despite his lack of access to Drucker's records.

Defendant finally argues that he could have used some of the information contained in Drucker's records to impeach plaintiff's credibility because the information demonstrated that plaintiff had or may have provided conflicting information to different people about various issues. We again conclude that, through sources including plaintiff's hospital records, plaintiff's deposition, and defendant's own deposition, defendant already knew, before trial, of qualitatively the same information that he now contends could have been used to challenge plaintiff's credibility. Consequently, we reject defendant's impeachment argument.

In summary, after reviewing Drucker's records and the trial record, we conclude that defendant had knowledge before trial of information qualitatively indistinguishable from that contained in Drucker's records. Had defendant chosen to do so, he could have raised at trial the issues that he now contends depended upon access to Drucker's records. We hold that the erroneous discovery ruling did not substantially affect defendant's rights under ORS 19.125(2) and, therefore, did not result in prejudice to defendant. Accordingly, the trial court's ruling does not require reversal of the judgment in plaintiff's favor.

The decision of the Court of Appeals is reversed in part and affirmed in part. The judgment of the circuit court is affirmed.