Argued and submitted March 24; resubmitted En Banc June 10, reversed and remanded October 28, 1998

# STATE OF OREGON,
*Respondent,*

*v.*

# WILLIAM ROBERT DOERN,
*Appellant.*

(9505-33253; CA A93818)

967 P2d 1230

Peter Gartlan, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Katharine M. Hoskinson, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

DEITS, C. J.

Landau, J., dissenting.

## DEITS, C. J.

Defendant appeals his convictions and the resulting sentence on two counts of assault in the second degree. ORS 163.175. He contends that the trial court erred by limiting his time for closing argument to the jury to 20 minutes.[1] We agree and reverse and remand.

Defendant was charged with first-degree assault, ORS 163.185, and with the two second-degree assault counts as alternative theories of culpability for the same crime.[2] Defendant shot and injured Marc Difrancisco in an encounter in a nightclub parking lot. There was evidence that defendant drove to the location to confront Difrancisco who, defendant thought, had raped defendant's girlfriend. Defendant asserted a self-defense defense, ORS 161.209, and also presented evidence and argument that the most serious crime of which he *could* be guilty was third-degree assault. ORS 163.165.

Defendant was apparently in his pickup truck at all times during the encounter. Difrancisco's whereabouts at the various stages of the incident are less clear. He was on foot at the beginning. According to defendant, Difrancisco pointed a handgun and fired a shot at defendant while Difrancisco was still outside of his car. Hence, defendant argued, he reached for and fired his own weapon only in response to Difrancisco's attack. The state disputed that Difrancisco had a gun or fired one. The door of Difrancisco's vehicle was damaged by defendant's shot. There was evidence that was consistent with a number of possible spatial relationships between Difrancisco and the car door and with various possible temporal relationships between the initiation of the encounter and the firing of defendant's gun. A companion of Difrancisco's moved him away from the area of the door and the driver's seat and drove him to the hospital, so his exact location in or near the car at the time of the shooting was never *certainly* determined.

---

[1] Given our disposition of this contention, we need not reach defendant's second assignment, in which he challenges the sentence that the trial court imposed.

[2] He was also charged with two other offenses, neither of which is involved in this appeal.

During the course of the trial, defendant and his counsel disagreed about trial tactics, which led to defendant electing and the trial court allowing him to proceed *pro se*. Among the matters about which defendant and his attorney did not see eye to eye was whether to present the testimony of defendant's girlfriend that she had been an eyewitness to the events and that Difrancisco had indeed fired at defendant. Defendant presented her testimony, and she was forcefully impeached.

The trial lasted five days. Before recessing for the evening on the day that the parties concluded their evidentiary presentations, the court stated to defendant and to the prosecuting attorney:

> "I'd like to suggest to both of you, and I don't know how long you anticipate, but I think especially with what I hope is the clarification of the elements that we can hold closing argument down to 15 or 20 minutes a-piece."

The next day, the court reiterated its ruling in the following exchange:

> "THE COURT:   And for the information of [the prosecutor] Mr. Kuykendall and Mr. Doern, we have about 60 minutes from now to bring this case to a conclusion. The instructions are longer and more complicated than usual, and I really need to ask each of you to limit yourselves to, I would say, 15 minutes on your opening and closing, 20 minutes for you and another five minutes for rebuttal.
>
> "\* \* \* \* \*
>
> "[Kuykendall]:   Thank you, Your Honor.
>
> "THE COURT:   —sir?
>
> "[DEFENDANT]:   And just for the record, I take exception to that—to that limiting.
>
> "THE COURT:   Okay. \* \* \*"

Insofar as we can determine from the record, defendant's argument lasted for roughly the 20 minutes he was allotted. A significant portion of the argument was devoted to his self-defense theory. Approximately three-fourths of the way through defendant's argument, the prosecuting attorney objected and stated that it was his understanding that the

jury was not to be instructed on self defense. The court responded that, although no self-defense instruction had been among the ones that it and the parties had gone over the previous day, it was the court's understanding "that self defense was part of the case," that defendant had requested an instruction on self-defense and that "I do intend to instruct on that issue." The prosecutor responded, "Good. I would ask that you do that."

Nevertheless, without any explanation that appears in the record at our disposal, no such instruction was given. The only issue that was submitted to the jury concerning Difrancisco's alleged hostile activities arose from the *state's* allegation, as a potential *sentencing* factor relevant only to the first-degree assault charge, that Difrancisco "did not substantially contribute to the commission of the * * * offense by precipitating the attack." In addition to their immediately intended purpose, defendant's arguments directed at his self-defense theory were also germane to that issue. Further, they were relevant inferentially to the state of mind with which he acted and, concomitantly, the degree of assault that he might have committed. The jury acquitted defendant of first-degree assault and found him guilty on the two second-degree assault charges. He appeals from the resulting conviction and sentence.

In his brief, defendant contends principally that the limitation on his closing argument violated his rights under the state and federal constitutional jury trial and counsel provisions. He relies on *State v. Rogoway*, 45 Or 601, 78 P 987, 81 P 234 (1904), where the Supreme Court held—without apparent differentiation between the state and federal provisions—that the defendant's jury trial rights were abrogated by the one-hour limit that the trial court had placed on his time for closing argument to the jury in a criminal trial. Defendant mentions ORCP 58 B only in passing in his brief but, at oral argument and in a memorandum of additional authorities, that rule became a focal theory for defendant's assertion of error.

· ORCP 58 B(5) is made applicable to criminal trials by ORS 136.330(1), and provides:

"Not more than two counsel shall address the jury in behalf of the plaintiff or defendant; the whole time occupied in behalf of either shall not be limited to less than two hours."

Because defendant's ORCP 58 B argument provides a potential nonconstitutional basis for our decision, we will reach the argument. *See, e.g., Leo v. Keisling*, 327 Or 556, 964 P2d 1023 (1998); *Zockert v. Fanning*, 310 Or 514, 800 P2d 773 (1990).

■ There is no question that the trial court's limitation of defendant's closing argument to 20 minutes violated ORCP 58 B and was error. The only issue is whether the error is reversible. Although most of the state's arguments for a negative answer were presented in its brief, and were accordingly responsive only to the constitutional issues that defendant raised in his brief, we will assume that the state intends those arguments to be considered in connection with the ORCP 58 B issue as well.[3]

■ The state contends first that the trial court did not actually impose a limit on defendant's argument time but, rather, merely *suggested* to the parties that they confine themselves to 20 minutes. We disagree. The fact that the court communicated its ruling through words that might seem precatory in an everyday setting does not change the very different import that those words carried when repeated twice by a judge from the bench in a trial over which he was presiding. We agree with defendant that the 20-minute limitation on his argument time constituted a ruling by the court.

■ The state next argues that defendant did not adequately preserve the error, because his objection simply challenged "that limiting," and it specified no ground. As indicated above, the state's argument was made in response to defendant's brief, in which his theories were constitutional. Without deciding whether defendant's objection in the trial court was adequate to preserve the constitutional arguments he advances on appeal, we hold that there is no preservation

---

[3] Both parties submitted short supplemental memoranda that deal with the ORCP 58 B issues directly. We will of course address the arguments presented in those memoranda, as well as the apposite contentions that appear in the briefs.

problem with respect to his ORCP 58 B argument. ORCP 58 B(5) deals solely and exclusively with closing jury arguments and with the time constraints that trial judges may place on them. It disallows precisely what the trial court did in limiting defendant's argument to less than two hours. Defendant objected to the limitation itself. Under the preservation principles enunciated in *State v. Hitz*, 307 Or 183, 766 P2d 373 (1988), he thereby raised the relevant *issue,* and it was not necessary for him to have also identified ORCP 58 B(5) to the trial court as the *source* for his position in order to preserve the argument that he now makes on appeal.

This case is a *particularly* appropriate one for the application of the *Hitz* principle, under which the raising of issues at trial "is essential" to preservation, but identifying the "source for a claimed position" is "less so." *Id.* at 188. The issue raised by defendant's objection was that the trial court erred in its *sua sponte* limitation of defendant's closing argument time to one-sixth of the minimum time that ORCP 58 B(5), the unmentioned "source," specifies. Although defendant made no reference to ORCP 58 B(5), it would seem to be a fair enough assumption that the judge presiding at defendant's trial was or could readily become familiar with the rules of procedure that govern and limit the exercise of his authority over the conduct of the trial. Under the circumstances, defendant's objection to the ruling was enough to prevent the trial court and the state from being "taken by surprise, misled, or denied opportunities to meet an argument," *Davis v. O'Brien,* 320 Or 729, 737, 891 P2d 1307 (1995), and it was sufficient under the rationale of *Hitz* to preserve the issue and the argument that defendant raises now.[4]

The dissent criticizes *Hitz* as being conducive to and having been applied in inconsistent ways. 156 Or App at 578. Consequently, the dissent suggests that *Hitz* ought not to be applied in resolving preservation questions. However, even if

---

[4] Alternatively—or perhaps analogously—the violation of ORCP 58 B is apparent on the face of the record, ORAP 5.45(2), and we might elect to reach the error in the interests of justice even in the absence of preservation.

the dissent's characterization of *Hitz* is correct, it *is* a precedential decision of the Oregon Supreme Court. This court is not free to disregard it.

*Hitz* is not—and does not purport to be—the sole and universal determinant of *all* preservation questions. However, it is difficult to imagine a preservation question that fits into the *Hitz* framework more neatly than the one in this case. There is simply no doubt that defendant's objection to the "limiting" of his argument raised an "issue" and omitted a "source." Any analytical problems that may inhere in *Hitz* itself, or in other cases that have applied it, provide no basis for our not applying it here, where it is so clearly apposite and the answer under it is so clear.

■      The state's final argument is that the trial court's error in violating ORCP 58 B is obviated by ORCP 12 B, under which the courts are to "disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the [affected] party." In essence, the state appears to regard ORCP 12 B, a rule of civil procedure, as serving the dual role of a harmless error rule on appeal. Whether or not that understanding of ORCP 12 B is correct, *but see Murphy v. Price*, 131 Or App 693, 699, 886 P2d 1047 (1994), *rev den* 321 Or 137 (1995), we are required by more conventional and more clearly applicable authority to consider whether the error that we have found requires reversal. Under ORS 138.230, the so-called "harmless error" statute applicable in criminal appeals, we are to affirm if the error "do[es] not affect the substantial rights of the parties." More generally, the Supreme Court has articulated the test for harmless error in criminal cases to be whether there is "little likelihood that the error affected the verdict." *State v. Hansen*, 304 Or 169, 180-81, 743 P2d 157 (1987). That statute and standard essentially parallel the corresponding statute, ORS 19.415(2) (*formerly* ORS 19.125(2)), that applies to civil cases and the principles in the case law applying the latter statute. As the Supreme Court explained recently in *Baker v. English*, 324 Or 585, 590-91, 932 P2d 57 (1997):

> "We also note that, in applying ORS 19.125(2), this court often examines whether it is likely that a trial court's error affected the outcome of the case below. For example,

in cases in which a trial court's error either did or may have affected the outcome, such as an error concerning a key issue before the jury, this court has concluded that the error substantially affected the rights of a party and, therefore, was prejudicial. The rationale behind such a conclusion is obvious: The rights of an aggrieved party are substantially affected if the outcome either would have or may have been different had the error not occurred.

"A review of our case law illustrates that principle. In *U.S. National Bank v. Boge*, 311 Or 550, 555, 814 P2d 1082 (1991), the trial court erroneously instructed the jury that, on the defendants' counterclaims, the plaintiff must have presented evidence showing more than mere honesty on its part in order to prove that it had acted in good faith. This court concluded that giving the instruction constituted prejudicial error because '[t]he standard for [the plaintiff's] conduct was the central issue to be decided' and the jury may have reached its verdict based upon the erroneous instruction. *Id.* at 566. Likewise, in *Honeywell v. Sterling Furniture Co.*, 310 Or 206, 211, 797 P2d 1019 (1990), this court held that it was prejudicial error to instruct the jury about the statutorily mandated distribution of a punitive damages award, despite the fact that the instruction legally was correct. In so holding, the court reasoned that the instruction 'encouraged the jury to award punitive damages for a [specific] purpose' and, consequently, that '[o]ffering [the] jury an additional, inappropriate basis for awarding punitive damages harmed the defendant.' *Id.* at 211, 212. *See also Brooks v. Bergholm*, 256 Or 1, 6, 470 P2d 154 (1970) (prejudicial error to refuse to give a limiting instruction cautioning the jury against considering the defendant's wealth in determining compensatory damages because the error 'related to the amount of damages' and, therefore, the court '[could not] say that it did not affect the jury's verdict'); *Armstrong v. Stegen*, 251 Or 340, 344, 445 P2d 509 (1968) (prejudicial error to submit to the jury a negligence allegation that was not supported by any evidence because doing so required the jury to speculate in reaching its result); *Watson v. Dodson*, 238 Or 621, 623, 395 P2d 866 (1964) (prejudicial error to deny a motion to amend a complaint to conform to the proof because, had the trial court allowed the amendment, additional instructions would have been given that might have affected the jury's consideration of the evidence)."

*See also Hernandez v. Barbo Machinery Co.*, 327 Or 99, 112, 957 P2d 147 (1998) (error "substantially affects the rights of an aggrieved party if the outcome of the case either would have or may have been different if the error had not occurred").

■      This case is analogous to those in the examples given by the Supreme Court where the trial court's error was of a kind that plausibly *may* have affected the outcome, and the appellate court could not say "that [the error] did not" have that effect. Defendant presented an effective argument to the jury, and he was acquitted of the most serious of the charged crimes. Whether his success might have been greater if he had been able to argue at greater length is necessarily a matter of conjecture. However, we are in no position to say that the denial of the requisite opportunity to argue could not have affected the verdict. Certainly, depriving a party of the ability to present argument to the jury is as *intrinsically* likely to affect its verdict as is misinstructing the jury in the various ways described in the cases discussed in *Baker*.

     Defendant advanced a defense that, had he prevailed, would have been completely exculpatory, and he also relied on both evidence and argument that were pertinent to his mental state and that could have led to a finding that he was guilty of third- rather than second-degree assault. In sum, there were disputed factual issues and there was evidence that supported defendant's view of them. That evidence, if believed by the factfinder, could have resulted either in defendant's acquittal or his conviction of a lesser offense than the one that the jury did find.

     The state argues, albeit in a somewhat different connection, that the factual issues were "simple." We reiterate, however, that the case took five days to try and resulted in defendant's acquittal of the most serious of the crimes with which he was charged. The two-hour minimum for argument time under ORCP 58 B does not apply only to complex cases; indeed, it applies to all criminal cases that are triable in circuit court and to the most trivial of civil disputes that rise above small claims jurisdiction. It clearly applies to this Measure 11 case. The state's view that the factual issues here

were "simple" was a matter for it to argue to the jury, and defendant's view of the factual issues was a matter that he had a right to argue to the jury as prescribed by law. The trial court's truncation of that right was not harmless error.

Reversed and remanded.

**LANDAU, J.,** dissenting.

At trial, defendant responded to the trial court's admonition to take no more than 20 minutes for closing arguments with the words, "I take exception to that—to that limiting." Defendant did not explain to the trial court the basis for his exception, why he believed he was entitled to more time. He made reference to no rule, statute, or constitutional provision requiring the trial court to give him more time.

On appeal, defendant asserted two arguments, and two arguments only, in his brief. First, he argued that the trial court's time limit violated Article I, section 11, of the Oregon Constitution. Second, he argued that the trial court's time limit violated the Sixth Amendment to the United States Constitution. In the course of his Oregon constitutional argument, defendant made the following remark:

> "ORCP 58 B(5) provides that each side in a civil case 'shall not be limited to less than two hours.' Ironically, if the victim had sued defendant for damages, defendant would have been granted more time to address the jury."

Thus, defendant did not assert that ORCP 58 B(5) applied to this case. Nowhere in his brief is there a reference to ORS 136.330(1). To the contrary, he noted what he understood to be the disparity between civil and criminal rules of procedure. Interestingly, the state did not mention ORS 136.330(1) in its brief on appeal either. At oral argument, defendant noted for the first time that ORCP 58 B(5) was not actually inconsistent with criminal procedure, but instead was directly applicable to criminal proceedings by way of ORS 136.330(1).

The majority nevertheless resolves this case on the basis of ORS 136.330(1), which was not cited to the trial court, not cited in the opening brief on appeal, not cited by the state, and only mentioned for the first time at oral argument.

The majority concludes that the argument that the statute controls was preserved by defendant's words at trial: "I take exception to that."

There is, perhaps, some authority to support the majority's conclusion that the matter properly has been preserved. The problem is, there also is ample authority to the contrary. In truth, the decisions of the appellate courts in this state have become difficult to reconcile, to put it charitably. For practically every decision holding that a given objection is sufficient to preserve an argument on appeal, there is a contrary decision holding that the same objection does not suffice. The majority's decision in this case only makes matters worse. A few examples:

**Point:** In *State v. White*, 119 Or App 424, 427, 850 P2d 1158, *rev den* 317 Or 486 (1993), the trial attorney stated, "I object to this line of questioning." We held that the objection "was not adequate to preserve the claimed error, because it did not identify the ground on which defendant now challenges the ruling on appeal." *Id.*

**Counterpoint:** The defendant in this case said, "I take exception to that." The majority holds that "it was not necessary for him to have also identified * * * the *source* for his position in order to preserve the argument that he now makes on appeal." 156 Or App at 572 (emphasis in original).

**Point:** In *State v. Riggs*, 143 Or App 427, 923 P2d 683 (1996), *rev den* 325 Or 247 (1997), the defendant at trial asserted a double jeopardy argument. In his motion papers, he cited both the Fifth Amendment to the United States Constitution and Article I, section 12, of the Oregon Constitution, but he argued only the federal constitutional theory. When he attempted to argue the state constitutional theory on appeal, we declared the argument not preserved, reasoning that, "[a]lthough defendant below cited Article I, section 12, as a *source*, he cited no Oregon cases and gave no indication to the trial court that a different analysis would apply under the Oregon Constitution." *Id.* at 431 (emphasis in original).

**Counterpoint:** In *State v. Cooper*, 120 Or App 490, 852 P2d 948 (1993), *rev'd on other grounds* 319 Or 162, 874 P2d 822 (1994), the defendant objected to the presence of a

police officer witness sitting at counsel table during trial. He cited OEC 615, but made a different argument under that rule on appeal than he did at trial. We held that the argument was preserved. *Id.* at 493-94.

**Point:** In *Hovey v. Davis*, 120 Or App 425, 427, 852 P2d 929, *rev den* 318 Or 26 (1993), the defendant raised an objection, citing only a case. Although we ultimately found that the argument was preserved for other reasons, we declared that "only citing a case as the ground for an objection does not preserve an objection." *Id.* at 428.

**Counterpoint:** In *State v. McCann*, 144 Or App 403, 927 P2d 129 (1996), *rev den* 324 Or 560 (1997), the state at trial asserted an argument on the basis of a single cited appellate decision. On appeal, we held that, even though the decision was inapposite, the state had preserved the underlying argument. *Id.* at 406-07.

The problem, in substantial part, appears to have its source with this court's mechanical reliance on *State v. Hitz*, 307 Or 183, 766 P2d 373 (1988). In that decision, the Supreme Court explained the law of preservation in the following terms:

> "We have previously drawn attention to the distinctions between raising an *issue* at trial, identifying a *source* for a claimed position, and making a particular *argument*. The first ordinarily is essential, the second less so, the third least."

*Id.* at 188 (emphasis in original; citation omitted). With no examination of the distinction between an issue, a source, and an argument, however, *Hitz* becomes no more than a handy citation to support a desired outcome by simply lodging a particular contention not raised at trial in the appropriate pigeonhole. Witness, for example, the fact that the majority relies on *Hitz* to justify its decision in this case, in which defendant took "exception" to the trial court's ruling but identified no particular rule, case, statute, constitutional provision, theory, or argument. 156 Or App at 572. Contrast that with our reliance on *Hitz* in *Riggs*, in which the defendant did

raise his double jeopardy claim and cited the Oregon Constitution, but still was held not to have preserved his state constitutional double jeopardy claim of error. *Riggs*, 143 Or App at 430-31.

In my view, preservation issues should not be resolved by appeal to such empty and elastic verbal formulae. The result is a body of cases that can only be a source of confusion to the bench and the practicing bar. Preservation is better viewed in practical terms. It is not so much a technicality of trial and appellate practice as it is a matter of fairness and efficiency: Did the trial court have a realistic opportunity to make the right call? The explanation of the Chief Judge in *J. Arlie Bryant, Inc. v. Columbia River Gorge Comm.*, 132 Or App 565, 568, 889 P2d 383, *rev den* 321 Or 47 (1995), is especially helpful in making that point:

> "Adherence to preservation requirements is important to the proper performance of appellate review. There are at least two reasons why that is so. First, the requirement that an issue be presented to the lower tribunal in order for it to be raised on appeal serves to prevent error. If the first tribunal is given the opportunity to make a ruling, its ruling may well be correct. Relatedly, it would be a disservice to the economy of the process to require the lower tribunal to conduct further proceedings in order to rectify an error that it was never given the initial opportunity to avoid.

> "The second reason is that requiring a party to present its issues at each adjudicative level is essential to a fair process for the other parties and participants. Generally, the opportunity to respond at the appellate level does not cure the denial of that opportunity in trial court and agency proceedings, where all of the factual and much of the legal development of cases must occur."

I would approach this case with precisely that sort of practical focus. Was the trial court given a realistic opportunity to make the right decision? I think not. Given the abbreviated objection—"I take exception to that"—there was no realistic way for the trial judge to know the nature of defendant's complaint. Was there a rule that required a longer time? Defendant did not say. Was there a statute that prohibited such a short argument time? Defendant did not say. Was

there a constitutional problem with the trial court's ruling? Defendant did not say.

The majority appears to base its opinion as to preservation on the fact that the rule so obviously permits at least two hours of closing argument. 156 Or App at 572. That argument cuts both ways, however. Can anyone seriously suggest that the trial judge in this case, acting in good faith when confronted with a citation to the proper rule, would have failed to make the right decision? Clearly, the only reason for the ruling below was that no one informed the court of the application of the controlling rule. Preservation is supposed to prevent precisely that sort of thing from happening.

The majority suggests alternatively that, even if not preserved, the error of which defendant complains is apparent on the face of the record and, as such, remains reviewable. *Id.* at 572 n 4. In making the argument, however, the majority forgets that an unpreserved argument is not instantly reviewable merely because it involves apparent legal error. As the Supreme Court explained in *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991), even if an error is plain on the face of the record,

> "the appellate court must exercise its discretion to consider or not to consider the error, and if the court chooses to consider the error, the court must articulate its reasons for doing so. This is not a requirement of mere form. A court's decision to recognize unpreserved or unraised error in this manner should be made with utmost caution. Such an action is contrary to the strong policies requiring preservation and raising of error."

(Citation omitted.) The court held that, in deciding whether to exercise our discretion to consider an error of law apparent on the face of the record, we must consider various factors, including the competing interests of the parties, the nature of the case, the gravity of the error, the ends of justice, the manner in which the error came to the attention of the trial court, and whether the policies behind the general rule of preservation have been served in some other way. *Id.* at 382 n 6.

In my view, assuming for the sake of argument that we are confronted with error apparent on the face of the record, this is not a case in which we should exercise our discretion to review the unpreserved error. I arrive at that conclusion principally because defendant has identified no harm that has flowed from the trial court's ruling. He argued his case in the allotted time and did not so much as suggest that he had anything further to say. Even on appeal, defendant fails to identify how he was prejudiced by the time limitation. In the absence of any identifiable harm that flowed from the trial court's ruling, and in light of the Supreme Court's cautionary instructions in *Ailes*, I find no basis for overcoming the general rule that this court does not review unpreserved error.

I would, therefore, affirm the judgment on preservation grounds and would not address the merits of defendant's contentions on appeal. I respectfully dissent from the majority's contrary decision.

Warren and Haselton, JJ., join in this dissent.