Argued and submitted March 3, affirmed April 13, 2005

## STATE OF OREGON,
*Appellant,*

*v.*

## VICTOR CHARLES RUMLER,
*Respondent.*

### D0205484T; A123556

110 P3d 115

Susan Howe, Assistant Attorney General, argued the cause for appellant. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Jill Smith, Assistant Attorney General.

Thomas Ifversen argued the cause for respondent. With him on the brief was Kahn & Ifversen, Attorneys, L.L.P.

Before Haselton, Presiding Judge, and Linder* and Ortega, Judges.

HASELTON, P. J.

---

* Linder, J., *vice* Richardson, S. J.

## HASELTON, P. J.

The state appeals from an order suppressing, *inter alia*, the results of an Intoxilyzer test in a prosecution for driving under the influence of intoxicants (DUII). ORS 813.010.[1] The trial court concluded that the state had failed to establish a sufficient foundation for admissibility under ORS 813.160(1)(b) because, at the time of the suppression hearing, the officer who had administered the Intoxilyzer test had no present recollection of administering that test. The trial court so concluded, notwithstanding that the state had proffered the contents of an Intoxilyzer checklist, which the officer testified he had accurately completed at the time that he had administered the test. The state now contends that the trial court's ruling was erroneous primarily because, regardless of the officer's lack of specific recollection at the time of the suppression hearing, (1) under OEC 803(5), the checklist that the officer completed contemporaneously was sufficient substantive evidence of compliance with the prescribed Intoxilyzer protocol; and (2) in all events, the officer's testimony that he invariably adhered to the prescribed procedures was sufficient evidence of "habit" under OEC 406. We conclude that the state failed to preserve either of those contentions before the trial court, *see State v. Wyatt*, 331 Or 335, 15 P3d 22 (2000), and we reject the state's other, related arguments without discussion. Accordingly, we affirm.

The material facts are undisputed. On October 3, 2002, Washington County Sheriff's Deputy Michael Rockwell stopped defendant on suspicion of DUII. After arresting defendant, Rockwell administered an Intoxilyzer 5000 test to defendant, completing a checklist as he did so. The Intoxilyzer test result indicated a .11 percent blood alcohol level.

Fourteen months later, in December 2003, the trial court held a pretrial hearing on defendant's motion to suppress, among other evidence, the Intoxilyzer test results. Rockwell testified that he had administered the Intoxilyzer test and that he had simultaneously completed the checklist. With respect to the particular process he had followed,

---

[1] The trial court also suppressed the results of a horizontal gaze nystagmus test. The state does not contest that ruling.

Rockwell testified that (1) he had sat facing defendant for the entire 15-minute preadministration observation period; (2) before beginning the observation period, he had checked the inside of defendant's mouth; (3) he had not seen defendant ingest anything, or vomit or regurgitate, during the observation period; and (4) at the end of the observation period, defendant had confirmed that he had not ingested anything or vomited or regurgitated. The state then offered, and the court admitted without objection, the checklist, which stated, in part:

OPERATIONAL CHECKLIST

1. Pre-Test Requirement: The operator is certain that the subject has not taken anything by mouth (drinking, smoking, eating, taking medication, etc.), vomited, or regurgitated liquid from stomach into mouth, for at least fifteen minutes before taking the test.

Observed by _Rockwell_

START TIME:_ 0144 _     STOP TIME:_ 0203 _

2. ASSURE THAT THE "POWER" SWITCH IS ON AND THE INSTRUMENT IS OUT OF THE "NOT READY" STAGE.

3. PUSH "START TEST" BUTTON TO INITIATE TESTING SEQUENCE.

4. INSERT TEST RECORD CARD.

5. AFTER INSTRUCTING THE SUBJECT ON HOW TO GIVE A PROPER BREATH SAMPLE, AND HAVING MET THE 15 MINUTE PRE-TEST REQUIREMENT, TAKE BREATH SAMPLE WHEN "PLEASE BLOW" APPEARS ON DISPLAY.

6. REMOVE TEST RECORD CARD WITH PRINTOUT OF TEST RESULTS.

The state also offered, and the court admitted without objection, the implied consent form that defendant had signed.

On cross-examination, defense counsel asked whether Rockwell's testimony was based on his present recollection:

"Q   Are you testifying, though, that you have specific memory of how this was conducted[,] or are you relying on some notes or other information that you took there?

"A   No, neither. It's how I do it every time.

"Q   So then would it be fair to say that you have no specific memory of the observation period with Mr. Rumler back in October of last year?

"A   No, I don't."

The prosecutor, on redirect, elicited testimony that Rockwell generally remembered being in the Intoxilyzer room with

defendant and "going through the process." The redirect examination continued:

"Q   So when you look at that piece of paper [the checklist], did you make this record at or near the time that you went through—you testified that you checked this off as you went through these steps?

"A   Yes.

"Q   And you made these notations while these were fresh in your mind?

"A   Correct.

"Q   So at the time you made this checklist, were you filling it out accurately with the information then and there that you knew?

"A   Yes.

"Q   So then[,] relying on this checklist then with the checklist in front of you, are you able to say that you went through steps one through six with Mr. Rumler?

"A   Based on the checklist, yes.

"* * * * *

"Q   Is there any doubt in your mind based on this Department of Oregon State Police operator's checklist that you went through steps one through six with Mr. Rumler?

"A   No doubt."

The trial court then ruled that, although Rockwell's testimony was "completely credible," the Intoxilyzer 5000 test results would be suppressed. The court explained its ruling as follows:

"The reason why they use these kind of records is for the purpose that we are talking about today but also so that when a person has this kind of specific information, that they can look back hopefully the day before, the morning of and then be remembering okay, that's right, I remember that guy and it was this and it was that and the other. So instead of just saying like if someone dies and we have a will, we don't have them to ask is this your will but that's why we have wills signed. But when you have a person testify, we need to be able to rely on their memory.

"I appreciate the fact that you are willing to say on the one hand I sure believe I did this and I have lots of reasons to believe that. This is my writing, this is what I always do and so how could I have not done it. And yet, what we need is a person's memory that that is actually what occurred.

"It doesn't mean that they have to remember all of those things by themself but the way I interpret it, it means that in being able to read a police report whether it's about a general item referenced in a report or specific things that are listed, which were enumerated well by Ms. Johnson as part of the intoxilizer [*sic*], that that has to be sufficient to refresh their memory. I don't fault you personally for that or professionally and I appreciate you being honest, but I don't find it's sufficient to go forward, so I will suppress that."

The state did not take issue with the court's reasoning or ruling. In particular, the prosecutor did not invoke OEC 803(5) or assert generally that, regardless of Rockwell's lack of present recollection, the content of the Intoxilyzer checklist was sufficient substantive evidence, as "past recollection recorded," that the prescribed Intoxilyzer protocol had been followed in this instance. Nor did the prosecutor invoke OEC 406 specifically or make any reference to Rockwell's testimony constituting substantively sufficient evidence of "habit."

On appeal, the state *does* advance both of those contentions—and with considerable persuasive force. First, the state asserts that the content of the completed Intoxilyzer checklist was admissible as substantive evidence under OEC 803(5) and that that evidence, if accepted as credible by the trial court,[2] established compliance with the requisites for admissibility of breath test results. *See* ORS 813.160(1)(b).[3]

---

[2] As noted, the trial court found Rockwell to be "completely credible."

[3] ORS 813.160(1)(b) provides, in pertinent part, that a chemical analysis is "valid" under ORS 813.300 (which addresses the use of blood alcohol content results in DUII prosecutions) if

"[i]t is an analysis of a person's breath and is performed by an individual possessing a valid permit to perform chemical analyses issued by the Department of State Police and is performed according to methods approved by the Department of State Police * * *."

The Department of Oregon State Police has promulgated OAR 257-030-0070, which prescribes the "approved methods for operating the Intoxilyzer 5000."

OEC 803(5) states that, notwithstanding the declarant's unavailability, there is an exception to the hearsay rule for

"[a] memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the memory of the witness and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party."

In particular, the state asserts that this case is indistinguishable from *State v. Scally*, 92 Or App 149, 758 P2d 365 (1988), in which we held that a police officer's reading of his report of the circumstances of a DUII arrest was admissible under OEC 803(5).

Second, the state argues that Rockwell's testimony was sufficient evidence of "habit" under OEC 406, which provides:

"(1)   Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

"(2)   As used in this section, 'habit' means a person's regular practice of meeting a particular kind of situation with a specific, distinctive type of conduct."

The state asserts that Rockwell's testimony that he invariably followed the required Intoxilyzer protocol is sufficient to establish that he did so in this case.

Defendant does not dispute that Rockwell's testimony on redirect examination satisfied the preconditions for admissibilty of the content of the completed checklist as "past recollection recorded" under OEC 803(5). However, defendant contends that certain language in OEC 803(8)(b) precludes admission of the content of the completed checklist;[4]

---

[4] OEC 803(8)(b) provides that the following are excepted from the hearsay rule, even though the declarant is available as a witness:

that *Scally* was wrongly decided and must be repudiated; and that reliance on the content of the completed checklist would violate defendant's constitutional right of confrontation under the analysis of *Crawford v. Washington,* 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004). Defendant offers no response to the state's "habit"-based argument.

We begin, as we must, with the question of preservation. *See Wyatt,* 331 Or at 345-47 (appellate court must determine *sua sponte* whether error was preserved, regardless of whether respondent concedes preservation). For the reasons that follow, we decline to address the merits of either of the state's contentions on appeal because neither was preserved before the trial court.[5]

Our inquiry leads us, once again, into the nebulous interstices of the preservation taxonomy announced in *State v. Hitz,* 307 Or 183, 188, 766 P2d 373 (1988). There, the court instructed:

> "We have previously drawn attention to the distinctions between raising an *issue* at trial, identifying a *source* for a claimed position, and making a particular *argument.* * * * The first ordinarily is essential, the second less so, the third least."

*Id.* (emphasis in original; citation omitted). Nevertheless, as we explained in *State v. Smith,* 184 Or App 118, 121, 55 P3d 553 (2002), "The problem, of course, is that the cases never have precisely defined what is meant by an 'issue,' as opposed to a 'source' or an 'argument.' " That, in turn, has contributed to what might be perceived as an "*ad hoc* flavor" to cases attempting to apply *Hitz*'s formulation. *Id.*; *see also State v. Doern,* 156 Or App 566, 577-79, 967 P2d 1230 (1998) (Landau, J., dissenting) (canvassing case law).

---

"Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth:

"* * * * *

"(b) Matters observed pursuant to duty imposed by laws as to which matters there was a duty to report, *excluding however, in criminal cases matters observed by police officers and other law enforcement personnel* * * *."

(Emphasis added.)

[5] The state does not contend that the trial court's suppression ruling constituted "an error of law apparent on the face of the record." ORAP 5.45(1).

Still, whether expressly or implicitly, more recent applications of *Hitz* have been less mechanical and more pragmatic. *Wyatt* is exemplary:

> "[A] party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted."

331 Or at 343; *see also State v. Taylor*, 198 Or App 460, 108 P3d 682 (2005) ("[W]hatever the abstract content of 'issue,' 'argument,' or 'authority,' the appealing party's statements before the trial court must have alerted the trial judge and opposing counsel to the substance of the position that is advanced on appeal."); *Smith*, 184 Or App at 121 (noting that more recent cases "emphasize the underlying purposes of preservation, in particular, fairness and efficiency"); *accord Doern*, 156 Or App at 579 (Landau, J., dissenting) (describing standard of preservation as: "Was the trial court given a realistic opportunity to make the right decision?").

Here, everyone—the parties and the trial court—understood that the "issue" (in *Hitz* terms) was whether Rockwell's testimony and the related exhibits established the admissibility under ORS 813.160 and OAR 257-030-0070 of the Intoxilyzer 5000 test results. Conversely, no one (*i.e.*, the prosecutor) ever suggested that, even if Rockwell's testimony about administering the Intoxilyzer test was itself inadequate to establish foundational admissibility, the content of the completed checklist was, as "past recollection recorded," sufficient to establish compliance with the prescribed protocol. As noted, the colloquy between counsel and the trial court included no reference to OEC 803(5) or to "past recollection recorded."

We imply no criticism. The state's failure to urge its present position before the trial court may well have been the product of the way in which Rockwell's testimony evolved. At least, that may have been true—up to a point. As noted, the completed checklist was admitted as an exhibit without *any*

objection during Rockwell's direct examination. In particular, defense counsel did not object to the checklist as inadmissible hearsay, which would, in turn, have required the prosecutor to identify and invoke an exception to the hearsay rule. Further, even after Rockwell, on cross-examination, acknowledged his lack of present or refeshed recollection, defense counsel did not move to strike the checklist exhibit or to limit its admissibility to nonhearsay uses—which, again, would have compelled the prosecutor to identify and invoke an applicable hearsay exception either for the exhibit itself or its contents.

Thus, it was only when the trial court announced its ruling and underlying reasoning that the prosecutor should reasonably have understood the need to invoke OEC 803(5) and to explain its significance to the trial court. That is, it was only after the trial court expressed its view that Rockwell's lack of present recollection precluded admission of the Intoxilyzer test results that the prosecutor should have informed the court that, regardless of Rockwell's lack of present recollection, (1) Rockwell's testimony on redirect regarding the circumstances of the completion of the checklist satisfied the requirements of OEC 803(5); and (2) the contents of the completed checklist, as "past recollection recorded," established the requisites for admissibility of the Intoxilyzer test results. The problem, of course, is that, even at that point, the state did not alert the trial court to its present contention.

Those circumstances evoke two related questions about preservation that we often ask during oral argument: "If the trial judge were sitting here today, would he or she be surprised by your argument?" And, "If we were to reverse based on your argument, would the trial judge feel 'blindsided' by our ruling?" Those questions are, of course, derivatives of *Wyatt*'s directive that a party must present its position with such specificity that the trial court "can identify its alleged error with enough clarity to permit it to consider and correct the error immediately." *Wyatt*, 331 Or at 337. Here, we have no doubt that the trial court would be surprised to learn of the state's present reliance on OEC 803(5) and would feel "blindsided" if we were to reverse on that basis. The matter is unpreserved.

The same is true of the state's alternative contention based on OEC 406. Before the trial court, the prosecutor never invoked OEC 406 or used the word "habit" or any synonymous term. In particular, once the court expressed its ruling and reasoning, the prosecutor never contended that, regardless of Rockwell's lack of present recollection, his testimony regarding his customary practice in administering Intoxilyzer tests constituted evidence of "habit" permitting the court to find that he had acted in conformity with that practice in administering the Intoxilyzer test to defendant. Again, the matter was unpreserved.

Affirmed.