Argued and submitted April 20, Franklin High School, Portland, affirmed May 31, 2006

## STATE OF OREGON,
*Respondent,*

*v.*

## ROBERT LEE MOSLEY,
*Appellant.*

0308-33801; A124212 (Control), A124581
(Cases Consolidated)

136 P3d 73

Rankin Johnson IV argued the cause and filed the brief for appellant.

Susan G. Howe, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Ortega, Judge, and Wilson, Judge pro tempore.

LANDAU, P. J.

**LANDAU, P. J.**

Defendant was convicted of assault in the second degree. ORS 163.175. He contended at trial that the assault was committed in self-defense. He claimed that he was frightened of the victim after listening to a violent "gangster rap" CD on which the victim sang. Defendant offered the CD into evidence. The trial court admitted the CD into evidence but ruled that it could not be played to the jury during closing arguments. On appeal, defendant argues that the trial court erred in ruling that the CD could not be played to the jury during closing arguments. We conclude that, because the record does not demonstrate that defendant ever asked the trial court to permit the jury to listen to the CD during closing arguments, he cannot now complain about the trial court's ruling. We therefore affirm.

The relevant facts are not in dispute. Defendant worked as a disc jockey at a bar and strip club. Miletich, an acquaintance of defendant, gave a CD to defendant and asked him to listen to it to see if defendant would agree to play it at the club. Miletich explained that he and a couple of his friends had produced the CD. Among the musicians who produced the CD was Miletich's friend, Beveridge.

Defendant listened to the CD. He decided that the music would not be appropriate to play at the club, however. He characterized the music as "gangster rap" and described Miletich's CD as containing violent and offensive lyrics. He believed that Miletich and Beveridge were "gangsters" and that they were "not the type of people you really want to have any type of conflict with."

Late one evening, Miletich and Beveridge went to the club where defendant worked. Miletich introduced Beveridge to defendant. Defendant and Beveridge briefly exchanged words of other than a friendly nature. Beveridge stood up to face defendant, and defendant struck Beveridge in the head with a glass, which exploded upon contact, requiring approximately 200 stitches to repair Beveridge's face.

At trial, defendant insisted that he had been afraid that Beveridge intended to do violence to him. He said that his fear was based, in part, on the music that he had listened to on Miletich and Beveridge's CD.

Defendant moved to admit the CD into evidence as Exhibit 102 and the cover art as Exhibit 101. The state objected, arguing that the exhibits were irrelevant. The trial court did not immediately rule on the motion. Defendant was allowed to play one track during the trial, however.

Before closing argument, defendant asked the trial court to "clarify the status of defense Exhibits 101 and 102." He reiterated that he offered both into evidence, stating that "I think the jury has a right to hear what [defendant] heard." According to defendant,

"I think now that [defendant] has testified, I think there's a foundation to enter the entire CD apart from just the song played in court, and that [defendant] testified that he did listen to the CD, the whole CD himself, and that was partly what influenced, in his mind, his need to defend himself. And that's what he relied on, and I think therefore the jury has a right—since this is a subjective standard, a reasonable standard, a reasonable subjective standard for self-defense, I think the jury has a right to hear what [defendant] heard."

The trial court responded: "I'm going to admit 101, going to admit 102. I'm not going to permit 102 to be played during closing argument for reasons of time. If the jury wants to listen to it, they can listen to it when they deliberate." Defendant said nothing further.

Defendant argues on appeal that the trial court erred in ruling that he could not play the CD to the jury during closing arguments. According to defendant, under ORCP 58 B(7)—made applicable to criminal trials by ORS 136.330(1)—he was entitled to no less than two hours of closing argument. The trial court was simply wrong, he argues, in ruling that there was no time to play the CD to the jury. The state argues that we need not address the merits of defendant's argument because his objection was not preserved. According to the state, the trial court cannot be faulted for not allowing defendant to play the CD to the jury

during closing argument when defendant never asked the trial court to allow him to do so in the first place. Defendant replies that, under this court's decision in *State v. Doern*, 156 Or App 566, 967 P2d 1230 (1998), *rev den*, 328 Or 666 (1999), he adequately preserved the claim of error.

We begin with the state's argument that defendant failed to preserve his claim of error, because that argument is dispositive. ORAP 5.45(1) provides, in part, that "[n]o matter claimed as error will be considered on appeal unless the claimed error was preserved in the lower court"; that is, the party asserting the error on appeal must have raised the issue to the trial court. The rule of preservation serves a number of purposes. It ensures "that the positions of the parties are presented clearly to the initial tribunal" and that "the parties are not taken by surprise, misled, or denied opportunities to meet an argument." *Davis v. O'Brien*, 320 Or 729, 737, 891 P2d 1307 (1995). It also provides the trial court with an opportunity to avoid error and obviate the need for an appeal. *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000).

Precisely what a party must do to adequately preserve a claim of error is, candidly, not easy to pin down from the appellate case law of this state. But it is clear that the party asserting error on appeal must do *something*, and that something must provide the trial court with enough information "to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *Id.*

*Doern* demonstrates that what a party must do to preserve a claim of error sometimes need not involve very much. In that case, the trial court gave the defendant a total of 20 minutes for closing argument in a criminal case. The defendant responded that "I take exception to that—to that limiting." A majority of this court concluded that the defendant's exception was sufficient to put the trial court on notice that its time limitation was erroneous, even if the defendant did not inform the trial court that there actually was a rule that expressly provided for a *minimum* of two hours of closing argument. 156 Or App at 572-73.

In this case, however, defendant did not take even the minimal step to preserve his claim of error that the defendant did in *Doern*. Defendant did nothing to put the state or

the trial court on notice that he wanted to play the CD that had been marked as Exhibit 102 to the jury during closing argument. The record shows that defendant wanted to make sure that he had offered the CD into evidence. The CD was admitted into evidence. Defendant never said anything to the court about a desire to play the CD to the jury during closing argument or about the need for sufficient time to do so. Certainly he said nothing sufficient "to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately[.]" *Wyatt*, 331 Or at 343. Defendant cannot now complain about the trial court not doing something that he never asked it to do.

Because we conclude that defendant failed to preserve the claim of error, we need not address the merits of the issue that he raises.

Affirmed.