Submitted on record and briefs August 22, affirmed December 19, 2007

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# ADEEN LOUISE JONES,
*Defendant-Appellant.*

Douglas County Circuit Court
04CR2025FE; A128254

174 P3d 1037

Jay Edwards filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Susan G. Howe, Senior Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

SCHUMAN, J.

## SCHUMAN, J.

Defendant appeals from a judgment of conviction for possession of a controlled substance, *former* ORS 475.992 (2003), *renumbered as* ORS 475.840 (2005), assigning error to the denial of her motion to suppress evidence discovered during a search of her purse. The trial court found that, contrary to defendant's testimony and consistently with the testimony of the police officer who conducted the search, defendant consented. Defendant now argues that the trial court's ruling was erroneous because her consent was obtained through exploitation of an unlawful stop and, in any event, there was no evidence that her consent to search her car encompassed the purse as well as the car. We conclude that defendant failed to preserve those claims of error before the trial court. Accordingly, we affirm.

■ We accept the trial court's findings of historical fact if there is "constitutionally sufficient evidence in the record to support" them, and we review the court's ruling based on those facts for errors of law. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993).

As he was leaving the parking lot of the Roseburg Police Station in his patrol car, Corporal Carpenter of the Roseburg Police Department noticed a vehicle passing in front of the station with darkly tinted rear and side windows and with stickers affixed to the rear window. Suspecting that such visibility obstructions constituted a traffic violation, he followed the vehicle as it pulled into the courthouse parking lot nearby. After parking a few spaces away, he approached the driver as the driver was leaving the vehicle.

Carpenter recognized the driver as Dodd, whom he knew from earlier contacts. He asked Dodd for his license. Dodd responded that he did not have any identification on him. Carpenter then ran a routine records check, which revealed that Dodd's license was suspended. At that point, Carpenter decided to conduct an inventory of the vehicle prior to its impoundment, and he called for a back-up officer. He also called Dodd's probation officer, whose office was in the courthouse.

While waiting for back-up to arrive, Carpenter spoke with Dodd and his passenger, the defendant in this case, who had joined the conversation outside of the vehicle. Carpenter asked Dodd for consent to search the vehicle, but Dodd refused. After learning that defendant was actually the vehicle's registered owner, Carpenter asked for her consent as well; she also replied "no." The back-up officer, Crouse, and Dodd's probation officer, Frost, arrived shortly thereafter.

At that point, defendant asked for permission to retrieve her dog from inside the vehicle. Carpenter and Crouse granted permission for her to do so. She walked to the vehicle and removed her dog, simultaneously taking her purse from the front seat. Crouse then told her that she had to leave the purse there so that it could be inventoried, and the purse was replaced.[1]

Crouse told defendant that Frost wanted to search the vehicle for evidence of any probation violations by Dodd and that Dodd's refusal to consent to a search looked suspicious. He asked defendant "if she would consent to a search of the vehicle, and she gave [him] consent to search the vehicle." He then proceeded with an inventory, looking for valuables and other dangerous items, while Frost began her search for contraband. Crouse subsequently opened defendant's purse. Inside, he discovered a black nylon case with what he recognized to be the plunger end of a syringe protruding from it. He opened that container as well. In it were baggies containing residue of a substance that later proved to be methamphetamine, as well as drug paraphernalia.

Defendant was arrested and charged with possession of a controlled substance. She moved to suppress the evidence on the ground that the search of her purse violated Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. At the suppression hearing, the state presented evidence that defendant had given consent to Crouse when he asked if he could search the vehicle and that, in any event, the search

---

[1] Defendant testified that she removed the purse from the car and then Crouse took it from her and put it back. Crouse testified that, when she started to take the purse from the car, he told her she could not do that, and she complied. Resolution of that factual dispute is not relevant to our decision.

was lawful because it was conducted in accordance with a valid administrative policy allowing police to inventory the contents of a lawfully impounded vehicle. Defendant, for her part, argued that she never gave Crouse the consent that he requested and that the search was not performed pursuant to a lawful inventory policy because the policy allowed too much officer discretion and was not promulgated by a politically accountable body. *See State v. Atkinson*, 298 Or 1, 688 P2d 832 (1984) (stating requirements for valid inventory). The trial court agreed with defendant that the inventory was invalid, but it denied defendant's motion on the basis of its finding that defendant consented.

■■   On appeal, defendant raises two arguments. First, she contends that she was unlawfully stopped when Crouse insisted that she could not take her purse from the car and that the resulting consent was obtained through exploitation of that stop. Second, she contends that, although she consented to the search of the car itself, her consent did not extend to its contents, in particular to her purse. The state concedes that the trial court correctly rejected the inventory argument, and we accept that concession. With respect to defendant's arguments regarding consent, the state initially responds that defendant failed to raise those issues before the trial court. We agree with the state.

■   Generally, an appellate court may not address whether the trial court has erred unless the adversely affected party has preserved the claim of error in the trial court. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 380, 823 P2d 956 (1991).[2] A claim of error is preserved for appeal when it is presented with enough specificity to allow the trial court to identify its alleged mistake and take immediate action to correct it. *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). In order to determine whether an issue has been presented to the trial court with sufficient specificity, we ask, " 'If the trial judge were sitting here today, would he or she be surprised by your argument?' And, 'If we were to reverse based on your

---

[2] An exception exists for error that is apparent on the face of the record. ORAP 5.45(1). Defendant does not contend that the trial court's suppression ruling fits within that exception.

argument, would the trial judge feel "blind-sided" by our ruling?'" *State v. Rumler*, 199 Or App 32, 41, 110 P3d 115 (2005).

Defendant did not argue at trial that her consent derived from an unlawful stop. Had she done so, the state might have developed a different record, attempting to demonstrate, for example, that the evidence inevitably would have been discovered—perhaps by the probation officer who was conducting a simultaneous search. *See State v. Hall*, 339 Or 7, 25, 115 P3d 908 (2005) (state can rebut presumption that a search that would not have occurred "but for" an unlawful stop was unlawful by demonstrating inevitable discovery). She also failed to argue that the search of her purse exceeded the scope of her consent to search the vehicle; rather, she argued only that no consent was given at all. Had she made the "scope of consent" argument, the state could have called on Crouse to elaborate on his conversation with her. Thus, not only would it be improper to reverse the trial court's decision on grounds that it did not have an opportunity to consider, it would also be unfair to the state to reverse on grounds that it did not have an opportunity or occasion to oppose.

Affirmed.