Argued and submitted January 21, affirmed December 30, 2009,
petition for review allowed June 11, 2010 (348 Or 414)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**ARICK TITUS SUNDBERG,**
*Defendant-Appellant.*

Linn County Circuit Court
05102194; A135487

225 P3d 89

Dennis N. Balske argued the cause and filed the brief for appellant.

Janet A. Klapstein, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

ORTEGA, J.

**ORTEGA, J.**

Defendant appeals a judgment of conviction for attempted unlawful sexual penetration, ORS 161.405(2)(b); ORS 163.411, and first-degree sexual abuse, ORS 163.427. On appeal, defendant raises assignments of error concerning (1) the exclusion of evidence that K, whom the victim also had accused of sexual abuse, ultimately was acquitted of charges arising from the victim's allegations and (2) the denial of defendant's motion for a new trial, based on claimed irregularities concerning jury selection and courtroom security. We reject defendant's third assignment of error without discussion. Because we conclude that defendant failed to preserve his first assignment of error and that the second is not reviewable, we affirm.

Both of defendant's convictions arose from an incident that occurred one evening when the 10-year-old victim, her mother, and others were visiting defendant. While giving the victim a piggyback ride, in the presence of others, defendant sexually touched her.

We turn to a more detailed examination of the record concerning the evidence regarding K. In a motion *in limine,* defendant sought to offer evidence of other allegations of sexual misconduct made by the victim and her mother— specifically, evidence that the victim had alleged sexual abuse by her 13-year-old cousin, K, and by her mother's former boyfriend; that the victim's mother had alleged that she herself had been sexually abused by defendant and raped by someone else; and that the victim's mother had alleged (and then recanted the allegation) that the victim's grandfather had abused the victim. Defendant contended that, because he was aware of those allegations, particularly the allegations concerning K, he avoided being alone with the victim's mother and her family and that his awareness of the allegations made it less likely that he would attempt to abuse the victim, especially in front of witnesses. Defendant also argued that the allegations concerning K were relevant to the defense theory that the victim made allegations to get attention from her mother and others. Although defendant noted that the case against K was dismissed at the close of the state's evidence, he did not explicitly seek admission of

evidence of K's acquittal. Rather, his motion requested that "evidence of the prior conduct of [the victim's mother and the victim], as described in the above offer of proof, be admitted into evidence at trial."

In a subsequent memorandum, defendant again summarized the allegations that he wished to offer as evidence. That memorandum made no mention of K's acquittal. Defendant argued that the evidence of the allegations by the victim's mother and the victim was relevant to show that defendant and his family were wary of being around the victim's mother and her family and

> "to show how unlikely it is that defendant would sexually abuse [the victim], knowing what he did about her and her mother, in the presence of five witnesses.
>
> *"Whether the allegations made by [the victim] were true or false does not matter: that they were made is relevant to prove defendant's state of mind* at the time he is alleged to have abused [the victim]."

(Emphasis added.)

At a hearing on defendant's motion, the court inquired about the state's intention to offer evidence of the victim's prior statements. That evidence included videotapes of two interviews, one by a police officer and the other by a caseworker with the Department of Human Services (DHS). The prosecutor explained that she did not intend to ask witnesses about the victim's statements concerning K and that she intended either to redact from the videotapes references to K or not to offer the tapes.

In response, defendant contended that the statements concerning K could not be redacted from the interviews containing statements concerning defendant and still "have it make any sense." He took the position that the videotapes would be admissible so long as the victim testified at trial, but "if the statement comes in, I believe that the defendant is entitled to have the whole statement come in and not just have it come in piecemeal * * *."

Defendant went on to argue that the allegations concerning K "are in this case at every turn, and in order to present the defendant's theory of the case, we have to be able to

have testimony about them." As defendant explained, his theory was that, because of the victim's and her mother's allegations about K and others, defendant felt that the victim and her mother "were dangerous and to be avoided, you wouldn't want to be alone together, you had to be careful what was going on, and all of this." He argued that the allegations concerning K were relevant

> "because we need to show that [defendant] knew about them and was acting in accordance with that knowledge at the time of this incident. That's what's critical for the defense to be able to prove. * * * [I]n a very real sense, *it doesn't matter whether the allegation against [K] is true or false. It was made, it was pending at that time, it hadn't been adjudicated yet at the time of this incident.*"

(Emphasis added.)

The prosecutor responded that evidence regarding other allegations would mislead the jury and confuse the issues and that evidence of the allegations concerning K was inadmissible under OEC 412. In addition, the prosecutor argued, the evidence of the allegations concerning K would "leave the jury without further information as to what did happen, what didn't happen, what was the final outcome, what does the final outcome mean and those kinds of things." The prosecutor contended that evidence of K's acquittal might confuse the jury.

Defendant responded that evidence of other allegations was necessary to show that allegations of sexual misconduct were made frequently throughout the victim's life, so the jury could understand "what might motivate that child." Defendant stated that K was granted the equivalent of a motion for a judgment of acquittal because there was no evidence from which a trier of fact could find guilt beyond a reasonable doubt. Defendant did not argue, however, that the jury would be confused if it did *not* hear about K's acquittal or that the allegations concerning K were *not* admissible without evidence of K's acquittal.

At the conclusion of the hearing, the trial court told the parties that it would take under advisement the issue of whether the allegations concerning K were admissible and "a subheading of that as to what extent does the court ruling in

[K's case] come into evidence." In a subsequent letter opinion, the court ruled that the allegations concerning K were admissible because, in the videotapes, the allegations concerning K were intertwined with the victim's statements about defendant. The court concluded, however, that evidence of K's acquittal, which occurred after the incident at issue in defendant's case, was irrelevant. The court entered an order in accordance with its letter opinion[1] and "reserve[d] ruling regarding any limiting instructions to a jury depending on the totality of the evidence received during trial."

Defendant offered no further argument regarding the admission of evidence of K's acquittal. At the beginning of the trial, defendant told the court that, so long as the victim took the stand, "[t]here is no objection to the playing of two * * * videotaped statements, one to DHS, one to the Albany police." The videotapes include statements about K. Defendant did not request any limiting instruction relating to the allegations concerning K.

We turn to the record concerning jury selection and courtroom security. On the morning of trial, a number of summoned jurors failed to appear for jury duty, so there were not enough jurors to provide an adequate pool for both defendant's case and another case, which was being tried in Courtroom #5 and involved three codefendants. Because the number of potential jurors needed for the case in Courtroom #5 was greater than the number needed for defendant's case, the trial judges decided to begin jury selection in Courtroom #5 first and to delay jury selection in defendant's case to the afternoon. As a result, some of the jurors in the pool for defendant's case had previously gone through *voir dire* in Courtroom #5.

In the morning, before *voir dire* in defendant's case, the trial court informed defense counsel that "we use jurors' numbers now instead of names, so * * * you're not gonna hear their names." Defense counsel replied "that's new to me," but raised no objection at that time. After discussion of some other issues, the court was in recess for about five hours.

---

[1] In the same order, the trial court ruled that other evidence that defendant sought to offer in the motion *in limine* was irrelevant. On appeal, defendant does not challenge that portion of the trial court's ruling.

In the afternoon, after the recess, defense counsel and the trial court discussed the use of an anonymous jury pool. The trial court explained that "we adopted the procedure partly in response to a concern of a number of jurors * * * that did not want their name known to litigants * * *." Defense counsel stated, "I don't have a problem with referring to the jurors by their numbers rather than their names, but I guess what I didn't realize until just a little bit ago here is that we would not even know the names of the jurors." He objected that anonymous *voir dire* would be difficult:

> "I do object to it because it's not just knowledge of the case, it's knowledge of the person that either [defendant] or I might have from their name that we don't have from looking at them. And if we don't ask them what is their name, there's no way for me to know if they're, you know, a spouse of somebody I know or, you know, a member of the infamous so and so clan. I mean, I just don't—I just don't have any way of getting to that. And so that's my concern."

The court emphasized that defense counsel was free to ask the jurors questions, but ruled that juror numbers would be used. Defendant made no other arguments concerning the use of an anonymous jury.

During *voir dire*, the jurors were referred to by number, not by name. Before asking any questions, the trial court told the jurors that "we need to know * * * if anyone has formed any opinion about this case or the subject matter of this case that would make it difficult for you to be impartial." The court then inquired about impediments to impartiality and excused some jurors accordingly.

After the trial court asked the jurors to provide some information about themselves, defense counsel examined the jurors. He began by asking how many jurors had gone through *voir dire* in Courtroom #5; although the record does not reflect the number who raised their hands, defense counsel noted that "some of you have been through this process and some of you haven't today." Among other questions, defense counsel asked the jurors, "Anyone here think for whatever reason they would be unable to decide this case solely on the basis of the law and the evidence? Anyone think they're gonna have a problem with that for any reason?"

Apparently, no one identified a problem. Defense counsel went on to ask individual jurors about themselves and asked about any obstacles to trying the case fairly.

After the jury had been sworn and excused for the evening, the trial court asked counsel, "[O]ther than the exception [that defense counsel] noted earlier about using numbers instead of names, is there any aspect of jury selection that anybody wants to object to?" Defense counsel answered no.

During defendant's trial, people entering the courtroom were screened through a metal detector, and their belongings were x-rayed. The jurors themselves apparently were not screened through the metal detector. During jury selection in Courtroom #5, jurors' names had been used and there was no security at the door. The record contains no information about when defendant first inquired about or became aware of the differences in procedure in Courtroom #5.

During the trial, the court instructed the jury at least twice to rely solely on the evidence admitted. Before opening statements, the trial court instructed the jury that the evidence would consist of witnesses' testimony and any exhibits and that the jury "may draw any reasonable inferences from the evidence, but you must not engage in guesswork or speculation." After the close of evidence, the court again instructed the jury that it should consider the evidence, not guesswork or conjecture. Defendant did not request any instruction or warning concerning the jury's anonymity or the courtroom security procedures.

After the jury returned guilty verdicts, defendant moved for a new trial "due to error in the method of the selection of the jury, an irregularity which prevented defendant from receiving a fair trial." He contended that it was error to use an anonymous jury because there was no compelling reason to do so and no precautions were taken to minimize any prejudicial effect on defendant. He also argued that, because of the different approach used in Courtroom #5, the jurors in defendant's case "would have understood the norm to have been [that] their names would be used and there would be no security." Defendant contended that those differences would

cause the jurors to believe that extraordinary security measures were being taken because defendant was dangerous. Defendant argued that the jury selection process violated his right to a fair trial.

During the sentencing hearing, the trial court addressed defendant's motion for a new trial. The court explained that, pursuant to ORS 10.205(2), the presiding judge had, about eight months before defendant's trial, authorized use of juror identification numbers in place of names. In the trial court's view, the procedure was authorized by statute, and "obviously I have no control over what another judge does." The court explained that, although the information would have to be requested before trial, juror names were available to anyone who requested the information, and "we simply do not use juror names in the courtroom during trials, but * * * the juror list is available to anyone that requests it."

The trial court denied defendant's motion for a new trial and later entered a judgment of conviction, from which defendant appeals.

■      Defendant's first assignment of error is that the trial court erred "when it allowed the introduction of evidence that the complaining witness had made a similar claim of sexual abuse against a cousin [K] but refused to allow introduction of the judgment of acquittal ordered at the conclusion of the state's evidence in that case." He now contends that evidence of K's acquittal should have been admitted because it was necessary to provide a complete picture regarding the victim's allegations about K, it was probative evidence that K did not commit an act of sexual abuse and thus that the victim was not truthful, and its admission was necessary for a fair trial. The state responds, *inter alia,* that defendant's arguments are unpreserved.

■      We agree that defendant did not preserve his present objections to the exclusion of the evidence of K's acquittal. To preserve an issue, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt,* 331

Or 335, 343, 15 P3d 22 (2000); *see also Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008) (explaining that preservation promotes the efficient administration of justice and allows a trial court to avoid or correct error, ensures fairness to the opposing party, and fosters full development of the record); *State v. Rumler*, 199 Or App 32, 41, 110 P3d 115 (2005) (explaining that, in applying *Wyatt*, an appellate court may consider whether the trial judge would be surprised by an appellant's argument or feel "blindsided" if reversed on the basis of the issue).

Here, defendant moved for the admission of evidence about the victim's allegations about K. Defendant focused on evidence that the victim and her mother had made allegations against others; although defendant never expressly sought to admit evidence of K's acquittal, the trial court considered the admissibility of that evidence as "a subheading of" the evidence of the allegations concerning K. At no time did defendant tell the trial court, as he now contends, that it would be error to admit evidence of the allegations concerning K without admitting evidence of K's acquittal, nor did he argue that the prosecution's use of evidence of the allegations concerning K opened the door to evidence of K's acquittal. Indeed, directly contrary to defendant's present arguments about relevance, defendant twice told the trial court that the truth or falsity of the K allegations did not matter. At no time did defendant alert the court to the issues that he now identifies as error. Accordingly, defendant's first assignment of error is unpreserved.

■　　In his second assignment of error, defendant argues that the trial court erred by denying his motion for a new trial. Defendant contends that he was denied a fair trial because the trial court failed to make findings regarding the need for an anonymous jury and courtroom security measures and failed to enact safeguards; in his view, the anonymity and security measures caused prospective jurors to view him as dangerous. The state responds, *inter alia*, that defendant did not properly preserve his present challenges to the use of an anonymous jury or to the courtroom security measures. We conclude that defendant waived his present objections.

■■ We review the denial of defendant's motion for a new trial for an abuse of discretion. *State v. Farmer*, 210 Or App 625, 640, 152 P3d 904, *rev den*, 342 Or 645 (2007). The motion was based on ORCP 64 B(1).[2] ORCP 64 B provides, in part:

> "A former judgment may be set aside and a new trial granted in an action where there has been a trial by jury on the motion of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:
>
> "(1) Irregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having fair trial."

*See also* ORS 136.535 (providing that ORCP 64 B applies to motions for new trials in criminal cases). An "irregularity" generally refers to a deviation from the usual rule or practice. *McCollum v. Kmart Corporation*, 228 Or App 101, 113, 207 P3d 1200 (2009).

■ When an irregularity occurs during trial and is known to a party but the party fails to call it to the trial court's attention, the party thereby waives any objection, and the denial of a later motion for a new trial on that ground generally is not reviewable. *State v. Langley*, 214 Or 445, 477, 323 P2d 301, *cert den*, 358 US 826 (1958); *see also Moore v. Adams*, 273 Or 576, 579, 542 P2d 490 (1975) ("[A] party who learns the facts regarding * * * any other irregularity which occurred during trial should promptly inform the trial court of such facts. One cannot suppress those facts, in hope of a favorable verdict, and then rely upon the same facts after an

---

[2] We understand defendant also to suggest that the different procedures used in Courtroom #5 could justify a new trial under ORCP 64 B(4), as "[n]ewly discovered evidence, material for the party making the application, which such party could not with reasonable diligence have discovered and produced at the trial." Even assuming that the procedures could constitute evidence, we cannot consider that basis for a new trial, because it was not plainly specified below. *See* ORCP 64 D (providing, in part, that, "[i]n all cases of motion for a new trial, the grounds thereof shall be plainly specified, and no cause of new trial not so stated shall be considered or regarded by the court"). In addition, defendant failed to show that he could not have discovered that information during trial. *State v. Arnold*, 320 Or 111, 120, 879 P2d 1272 (1994) (identifying, as one factor, that newly discovered evidence "must be such as, with reasonable diligence, could not have been discovered before or during the trial").

adverse verdict has been returned." (Citations omitted.));
*State v. Dream*, 202 Or App 245, 248, 121 P3d 699 (2005),
*vac'd for recons on other grounds*, 345 Or 315, 195 P3d 62
(2008) (where the defendant did not argue until after *voir
dire* that the trial court needed to make findings of a security
risk to justify the use of restraints during *voir dire*, his later
motion for mistrial was too late); *Sansone v. Garvey, Schubert
& Barer*, 188 Or App 206, 226-27, 71 P3d 124, *rev den*, 336 Or
16 (2003) (explaining that a party who believes that an error
occurs during trial should object and, on appeal, assign error
to the ruling on the objection).

Here, defendant identifies several purported irregu-
larities. He contends that the trial court erroneously failed
(1) to determine that compelling circumstances required the
use of an anonymous jury, (2) to offer the jury a neutral
explanation for its anonymity, (3) to make findings regarding
the need for heightened security, and (4) to pursue less
restrictive security measures. During trial, however, defen-
dant knew of and failed to object to those purported irregu-
larities. Before filing his motion for a new trial, defendant
never told the trial court that it needed to make any findings,
never raised a concern that jurors would infer that he was
dangerous, and never requested any instruction or explana-
tion concerning anonymity or security measures. His failure
to do so operated to waive his current objections.

The same is true as to the different procedure used
in Courtroom #5, which defendant contends increased the
risk that jurors would view him as dangerous. During trial,
defendant knew that his jury had been selected anonymously
and that courtroom security measures were in place, and he
knew that some jurors had previously gone through *voir dire*
in Courtroom #5. Nothing in the record indicates when
he first inquired about whether the jurors' experiences in
Courtroom #5 might have differed from their experiences in
his case, nor does the record reveal when he first learned of
the differences. Defendant had enough information to know
that, if he was concerned that the jurors might draw a
negative inference about him, he should inquire further
about the possible effects of the juror anonymity and court-
room security measures, or he should ask the court to provide
the jurors with a neutral explanation. He did not do so.

Under the circumstances, defendant waived any right to a new trial based on those purported irregularities. *See Way v. Prosch*, 163 Or App 437, 988 P2d 422 (1999). In *Way*, a child custody dispute, the mother moved for a new trial because the trial judge, as an attorney in private practice before becoming a judge, had had contact with the father regarding the custody issue. *Id.* at 439. Before trial, the mother believed that there might have been contact between the trial judge and the father, but she did not inquire further or seek recusal. We concluded that, by electing to proceed with trial without taking any further action, she had waived her right to a new trial on the basis of the later-asserted irregularity. *Id.* at 445-46; *see also McCollum*, 228 Or App at 115-16 (concluding that the plaintiff waived any objection that the trial court's failure to review a document would warrant a new trial, where the plaintiff requested in a pretrial conference that the trial court conduct *in camera* review of the document if the defendant had it in the courtroom and, after the defendant stated that the document was not there, the plaintiff did not ask the court to require production or allow a continuance to obtain the document). Likewise here, defendant waived his objections to purported irregularities in the trial proceedings, and the trial court's denial of his motion for a new trial accordingly is not reviewable.

Affirmed.