Argued and submitted September 15, 2010, decision of Court of Appeals reversed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings February 19, 2011

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## ARICK TITUS SUNDBERG,
*Petitioner on Review.*

(CC 05102194; CA A135487; SC S058116)

247 P3d 1213

Dennis N. Balske, Portland, argued the cause and filed the brief for petitioner on review.

Janet A. Klapstein, Assistant Attorney General, argued the cause and filed the brief for respondent on review. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Walter J. Ledesma, Woodburn, filed a brief for *amicus curiae* Oregon Trial Lawyers Association.

Before De Muniz, Chief Justice, and Durham, Balmer, Kistler, Walters, and Linder, Justices.**

BALMER, J.

** Gillette, J., retired December 31, 2010, and did not participate in the decision of this case. Landau, J., did not participate in the consideration or decision of this case.

**BALMER, J.**

This criminal case requires us to determine the circumstances, if any, that permit a trial court to empanel an anonymous jury.[1] Defendant was charged with several sex crimes. At the outset of trial, the trial court ruled that the names and certain other personal information of prospective jurors would not be disclosed to the parties, counsel, or the public. A jury was selected and empanelled, and the jury ultimately found defendant guilty of first-degree sexual abuse (ORS 163.427) and attempted unlawful sexual penetration (ORS 161.405(2)(b); ORS 163.411). Although defendant had objected to the use of anonymous prospective jurors at the time of jury selection, the Court of Appeals held that his later actions constituted a waiver of that objection and affirmed defendant's conviction. *State v. Sundberg*, 233 Or App 77, 225 P3d 89 (2009). For the reasons set out below, we conclude that defendant properly preserved, and did not waive, his objection to the anonymous jury. We further conclude that the trial court erred in using an anonymous jury without determining that withholding the names of jurors was justified on security or other grounds and without taking any steps to mitigate possible prejudice to defendant.

## FACTS AND PROCEDURAL HISTORY

We take the facts from the Court of Appeals opinion and the record. In reviewing a judgment of conviction, we state the facts in the light most favorable to the state. *See, e.g., State v. Gibson*, 338 Or 560, 562, 113 P3d 423, *cert den*, 546 US 1044 (2005) (so stating).

In August 2005, the victim, along with her mother, siblings, and a friend of her mother's, visited defendant, who was the victim's uncle. The victim was 10 years old at the time. While in defendant's yard, defendant gave the victim a piggyback ride, during which he placed his fingers inside the victim's underwear and touched the victim in a sexual manner. The victim reported defendant's behavior to her stepmother, who contacted the police. As noted, defendant was indicted for various sex abuse crimes and, after a jury trial,

---

[1] We do not address the other issues that defendant raises on review.

was convicted of attempted sexual penetration and sexual abuse.

On the day of defendant's trial, another criminal trial was being held in another courtroom in the Linn County Courthouse. There were insufficient jurors at the courthouse that day to conduct *voir dire* simultaneously for both defendant's trial and the other trial. The two trial judges decided that *voir dire* for the other trial would be conducted in the morning in the courtroom where the other case was being tried, and then, in the afternoon, jurors who had not been selected for service in the other case would become part of the jury pool for defendant's trial. During *voir dire* in the other criminal case, prospective jurors revealed their names, addresses, and places of employment as part of the jury selection process.

During preliminary proceedings in defendant's trial, and before *voir dire*, the trial court told defense counsel that the court intended to use juror numbers instead of names. Defense counsel stated that this procedure was new to him but raised no objection. The court then recessed for approximately five hours while *voir dire* was completed in the other case. That afternoon, at the start of *voir dire* in defendant's case, defense counsel stated that he had been unaware that he would not receive jurors' names at all until "just a little bit ago." Rather, defense counsel said that he thought that the trial court's earlier comments meant only that the jurors would be called by number and that he would still receive a list of the jurors' names. Defense counsel objected to the court's procedure, stating that he was concerned that he would be unable to discover sufficient information about the jurors. In response, the trial court explained:

> "[W]e adopted the procedure partly in response to a concern of a number of jurors last year, over time, but it kind of culminated last year, that did not want their name known to litigants, and we checked around and quite a number of the counties in the state are doing this, not a majority, but a number of them. So we are doing it and they're referred to by numbers. And if you want to, you can ask them questions about their knowledge. A question on *voir dire* isn't your knowledge of them, it's their knowledge of you and your case or the type of case."

The trial court then overruled defendant's objection. During *voir dire,* jurors were told not to reveal their names, addresses, or the names of their employers.[2] Jurors could state the type of employment in which they were engaged and describe the area in which they lived, but not give specifics. When some jurors started to identify their employers or their spouses' employers, the court cautioned them against doing so.

After the jury returned a guilty verdict, defendant filed a motion for a new trial under ORCP 64 B(1)[3] on the ground, among others, that the anonymous jury selection process was an "irregularity" at trial that denied him an impartial jury and a fair trial in violation of Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution.[4] Defendant asserted that there was no compelling reason for the trial court to use an anonymous jury and, more specifically, that defendant was prejudiced because different procedures had been used during *voir dire* for the other case, where jurors' names were revealed. Defendant argued that those jurors who had participated in or watched *voir dire* in both courtrooms would have noticed the different procedures and might have concluded

---

[2] Neither party suggests that different legal principles should apply to the different categories of personal information—names, addresses, employers—that the trial court directed the prospective jurors not to disclose. The trial court and the Court of Appeals' rulings also do not distinguish between those categories. For convenience, we use the term "anonymous jury" to refer to the individuals in the jury pool and the empanelled jury in this case whose names, addresses, and employers were withheld from the parties at the direction of the trial court.

[3] ORCP 64 B provides, in part:

"A former judgment may be set aside and a new trial granted in an action where there has been a trial by jury on the motion of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:

"(1) Irregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having fair trial."

ORS 136.535 provides that ORCP 64 B applies to motions for new trial in criminal cases.

[4] Article I, section 11, provides, in part, that "[i]n all criminal prosecutions, the accused shall have the right to public trial by an impartial jury[.]" The Sixth Amendment to the United States Constitution provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury[.]"

that defendant was dangerous, thus violating defendant's right to an impartial jury and to the presumption of innocence.[5] The trial court denied defendant's motion.

Defendant appealed, assigning error, *inter alia*, to the trial court's denial of his motion for a new trial. The Court of Appeals affirmed, concluding that defendant had waived any right to a new trial based on jury irregularities by not objecting before the jury returned a guilty verdict. *Sundberg*, 233 Or App at 88. The Court of Appeals noted that defendant did not ask the trial court to make findings to justify the use of an anonymous jury, did not request any cautionary instruction to mitigate any adverse inference that the jury might draw from that procedure, and did not assert that the procedure implied any dangerousness on defendant's part. *Id.* As to the fact that juror names were disclosed during jury selection in the other trial, the Court of Appeals concluded that defendant knew that a number of jurors had gone through *voir dire* previously and should have inquired further about the procedures in that courtroom if defendant had concerns about the propriety of *voir dire* in his trial. In the Court of Appeals' view, defendant "knew of and failed to object to those purported irregularities," *id.*, and therefore waived any right to a new trial based on them. *Id.* at 89.

## PRESERVATION

■ It is undisputed that defendant objected during jury selection when he learned that he would not receive the names of jurors, stating that he would be unable to gather sufficient information about them to conduct adequate *voir dire*. Although defendant did not cite the Oregon or United States constitutions at that time, his concern that the procedure would hinder his ability to obtain an impartial jury was apparent. The trial court overruled his objection. Defendant then raised the objection again in his motion for a new trial, this time asserting that the anonymous jury procedure violated state statutes and the Oregon and United States constitutions. In addition to arguing that he was prevented from conducting adequate *voir dire*, defendant, in his motion for a

---

[5] Some of the prospective jurors in defendant's trial had participated in *voir dire* in the other courtroom; however, the record does not indicate whether any of them were selected for defendant's jury.

new trial, also asserted that the unexplained use of anonymous prospective jurors would cause jurors to think that defendant was dangerous, and he cited a federal case for that proposition. Thus, defendant preserved his core claim—that he was entitled to have access to juror names during jury selection—by putting the trial court on notice when that purported error occurred and providing the court an opportunity to correct it, *see State v. Haugen*, 349 Or 174, 199, 243 P3d 31 (2010) (preservation requirement intended to allow trial court to correct errors as they occur), and, in his motion for a new trial, he articulated additional reasons that he believed the use of an anonymous jury was error and cited appropriate legal authorities for that position.

The state nevertheless argues that defendant's objection was not preserved because he failed to ask the trial court to make findings to support its decision to empanel an anonymous jury. That argument ignores the trial court's statement, in response to defendant's initial objection, that the circuit judges in Linn County had "adopted the procedure" of using anonymous juries and "we are doing it." Clearly, the trial court's view was that the procedure had been adopted as a general rule, that the court was going to follow the procedure, and that findings were not needed to justify the procedure in any particular case. Similarly, the state faults defendant for not requesting a jury instruction that would have provided a neutral explanation for the anonymous jury and mitigated any prejudice to him. However, defendant's central argument—in his motion for a new trial and on appeal—was not based on a claim that the trial court erred in failing to give a particular instruction, but rather on the claim that the use of an anonymous jury without any determination by the trial court that anonymity was necessary to protect the jurors from harm, intimidation, or harassment violated his right to trial by an impartial jury.

The state is correct that, in making his initial objection in the trial court, defendant did not argue that the anonymous jury procedure compromised the presumption of innocence to which he was entitled under Article I, section 11, or the Sixth Amendment. However, defendant did express concern about his ability to conduct adequate *voir dire* if he was not permitted to know the names, addresses, and employers

of the prospective jurors or their spouses. That concern directly implicates a defendant's right to an "impartial jury" that is protected by Article I, section 11. Nothing suggests that this is a situation where a party "learns the facts" regarding an irregularity during trial and "suppress[es] those facts, in the hope of a favorable verdict, and then rel[ies] upon the same facts after an adverse verdict has been returned" to file a motion for a new trial. *See Moore v. Adams,* 273 Or 576, 579, 542 P2d 490 (1975) (stating that motion for new trial should not be granted in those circumstances). Defendant's objections prior to *voir dire* and in his new trial motion sufficiently preserved for appeal his argument that the trial court's use of an anonymous jury violated his Article I, section 11, rights. *See State v. Hitz,* 307 Or 183, 188, 766 P2d 373 (1988) (distinguishing between raising an "issue at trial," identifying a "source for a claimed position," and "making a particular argument," and asserting that only the first is "essential").

## MERITS

Anonymous jury selection is an issue of first impression for this court. We begin by examining the grounds offered by the trial court for empanelling an anonymous jury. If the trial court was without authority to bar the parties from learning the identities of prospective jurors, then the trial court in this case erred in doing so, and we need not consider defendant's constitutional arguments.

At the hearing on defendant's motion for a new trial, the court stated that anonymous juries, as used in Linn County, were expressly authorized by ORS 10.205(2),[6] and the state takes the same position before this court. We disagree that the statute addresses the procedure that the trial court invoked in this case. By its terms, ORS 10.205(2) allows the presiding judge to pair juror names with numbers and

---

[6] ORS 10.205(2) provides:

"The presiding judge for the judicial district may authorize the use of juror identification numbers in place of juror names in the performance of functions under ORS 10.215 to 10.265, 132.020 and ORCP 57 B for the selection of jurors in the county, except for functions under ORS 10.215(4) and 10.225(3), when to do so would promote the efficiency of the selection process, but the selection must be done randomly."

then to use those numbers to compile jury lists and select jurors in order to "promote efficiency of the selection process." Nothing in the statute suggests that it was intended to authorize a trial court to prevent parties from learning the names, employers, and other identifying information about prospective jurors during *voir dire*. The trial court here did not simply "use juror identification numbers in place of juror names" to "promote efficiency" in the selection process, but rather viewed the statute as authority to withhold the names and other information regarding individual jurors. Indeed, the rationale offered by the trial court when defendant objected to the procedure was not efficiency or administrative convenience, but rather that previous jurors in the county had not wanted their names disclosed to litigants.[7]

Although ORS 10.205(2) does not itself address or authorize anonymous juries, trial courts traditionally have had wide latitude in conducting the trials over which they preside, including jury selection and *voir dire*. *See, e.g., State v. Barnett*, 251 Or 234, 237-38, 445 P2d 124 (1968) ("The scope of voir dire examination is in the trial court's discretionary power to efficiently and expeditiously conduct the trial."); *Ross v. Oklahoma*, 487 US 81, 88, 108 S Ct 2273, 101 L Ed 2d 80 (1988) (peremptory challenges "are a means to achieve the end of an impartial jury" but are not constitutionally required). And while this court has not previously addressed the issue of whether trial judges have authority to empanel anonymous juries, state and federal courts that have considered the issue have concluded that they do—in limited circumstances. *See, e.g., U. S. v. Amuso*, 21 F3d 1251, 1264 (2d Cir), *cert den*, 513 US 932 (1994) (trial court may use anonymous jury to protect jurors' privacy and security, but also must protect defendant's presumption of innocence and right to conduct *voir dire*); *U. S. v. Paccione*, 949 F2d 1183, 1192 (2d Cir 1991), *cert den*, 505 US 1220 (1992) (trial court may use anonymous jury if court determines there is "strong

---

[7] Defendant does not suggest, and the record does not reflect, that the trial court used the anonymous jury procedure in bad faith or out of any ill will towards defendant. Rather it seems clear that the trial court was simply implementing a policy that apparently had been agreed upon by the Linn County circuit judges. The record does reflect, however, that some jury trials in Linn County—including the criminal trial being conducted in another courtroom at the same time as defendant's trial—did not use anonymous juries.

reason" to protect jury and court takes steps to minimize "prejudicial effects" on defendant and protects defendant's "fundamental rights"); *Commonwealth v. Angiulo*, 415 Mass 502, 527, 615 NE 2d 155, 171 (1993) (anonymous jury permitted on case-specific basis based on written findings; trial court must take steps to protect defendant's constitutional rights); *State v. Ross*, 174 P3d 628, 636 (Utah 2007) (trial court has discretion to use anonymous jury, but must find "compelling reason" based on jury protection and take reasonable precautions to protect defendant's rights).

■　In the absence of any indication that Oregon law imposes an absolute prohibition on a trial court's use of an anonymous jury, we conclude that trial courts have the authority to require that the jury be seated without disclosing the names, addresses, and employers of prospective jurors to the parties. Like other decisions concerning the conduct of a trial, however, the trial court's authority to empanel an anonymous jury must be exercised consistently with the defendant's constitutional rights.

Accordingly, we turn to defendant's argument that the trial court's use of an anonymous jury in this case violated his Article I, section 11, right to "trial by an impartial jury." Defendant identifies two different ways in which the trial court's decision to empanel an anonymous jury violated that right. First, he asserts that, without knowing the names, addresses, or employers of jurors, his ability to conduct adequate *voir dire* and obtain the constitutionally guaranteed "impartial" jury was impaired. Second, he argues that the trial court's use of an anonymous jury—without any explanation to the jury about why they were prohibited from disclosing their names, addresses, or employers—may have caused the jury to conclude that defendant was dangerous, thus threatening the presumption of innocence to which he was constitutionally entitled.

Defendant agrees that there are circumstances in which an anonymous jury would be constitutionally permissible, but argues that in this case the trial court made no findings as to any need to protect jurors by ensuring their anonymity and also failed to take any other steps to minimize possible prejudice to him. Defendant suggests that this court,

in applying Article I, section 11, should adopt a version of the test used by a number of federal and state courts, which permits an anonymous jury only when the trial court determines that "there is a strong reason to believe that the jury needs protection" and takes "reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected." *Paccione*, 949 F2d at 1192.

The state responds that legitimate concerns about security, privacy, and intimidation often will support a trial court's decision to protect juror identities. Further, the state argues, juror anonymity will rarely be problematic, because specific names and addresses will rarely have any bearing on juror bias; rather, it is the jurors' personal experience with the type of crime in question and their knowledge of counsel, parties, and witnesses that is relevant to possible bias. Those matters, the state urges, can be sufficiently probed during *voir dire* even if the jurors' names are not disclosed. As to the concern that an anonymous jury may suggest a defendant's guilt, the state asserts that there is no basis for jurors to assume that anonymous juries are not routine and that jurors thus are unlikely to view a defendant in a case with an anonymous jury as dangerous.

In assessing defendant's argument that the use of an anonymous jury violates Article I, section 11, we first consider the wording of that provision, the historical circumstances that gave rise to it, and the case law interpreting it. *Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992). Nothing in the text or historical background of Article I, section 11, indicates that a defendant's right to an "impartial jury" includes a constitutional right to be provided with the names of jurors. The practice, in Oregon and elsewhere in the country, since before ratification of the Oregon Constitution, has been for jurors' names to be known. *See* W. H. Gray, *A History of Oregon* 396 (1870) (documenting jurors' names in 1845 trial in Willamette Valley); Kory A. Langhofer, *Unaccountability at the Founding: The Originalist Case for Anonymous Juries*, 115 Yale LJ 1823, 1825 (2004) (noting that jurors' names were generally known to litigants in late 1700s). Aside from the fact that litigants ordinarily had access to jurors'

names, however, nothing in the historical or legal record suggests that access to juror names was itself considered a constitutional right.

■      We turn to our cases discussing Article I, section 11, more generally. In *State v. Amini*, 331 Or 384, 15 P3d 541 (2000), this court analyzed the impartial jury requirement of Article I, section 11, and concluded:

> "The * * * history of trial by jury reveals that, by the eighteenth century, the requirement of an impartial jury reflected several related concerns, including that jurors be honest, that they not be interested in the outcome of the case, and that they be free from influence by the parties, particularly by the state."

*Id.* at 391. An "impartial jury," then, is one "that is not biased in favor of or against either party, but is influenced in making its decision only by evidence produced at trial and legal standards provided by the trial court." *Id.*

■      More recently, we relied on *Amini* in *State v. Cavan*, 337 Or 433, 445, 98 P3d 381 (2004), in concluding that the impartial jury guarantee also protects a defendant from "impermissible influences of [the trial] environment" that imply a defendant's guilt to the jury. In *Cavan*, the defendant, an inmate accused of assaulting a corrections officer, was tried in a courtroom that was located in the visitor's center of the Snake River Correctional Institution. Jurors were screened through metal detectors and required to store their personal belongings outside the courtroom; the prison doors were locked behind them after they entered. This court held that holding the trial in a prison, "an inherently dangerous place[,]" deprived the setting of the "aura of neutrality" that attends a public courthouse and implied to the jury "the overriding impression of a defendant's dangerousness and * * * by extension his * * * guilt" in violation of Article I, section 11. *Id.* at 448. We cited earlier cases in which we had "acknowledged the possibility that external factors may influence jurors after they have been impaneled and that such forces may affect the jurors unconsciously." *Id.* at 445, *citing State v. Montez*, 309 Or 564, 575, 789 P2d 1352 (1990). For example, the concern that jurors will consider a defendant who appears in court in shackles or other visible

restraints to be dangerous—thereby undermining the presumption of innocence—is the basis for decisions requiring that a trial court make specific findings of fact to support a conclusion that restraints are necessary before the court may permit or require them. *See State v. Farrar*, 309 Or 132, 156, 786 P2d 161 (1990) (illustrating proposition). [8]

■ We agree with defendant that *Amini* and *Cavan* demonstrate that the impartial jury guarantee protects a defendant both from individual jurors who are biased and from external factors, such as courtroom conditions, suggesting a particular defendant's dangerousness or guilt. The "touchstone of impartiality" is "the juror's ability to set aside any pre-existing opinions or impressions" and to decide the case based on the facts and law presented at trial. *State v. Evans*, 344 Or 358, 362, 182 P3d 175 (2008). Empanelling an anonymous jury can affect a defendant's right to such an impartial jury, first, by hindering his ability to conduct *voir dire* and select jurors who are impartial, and second, because it is an external factor—not the facts or the law—that may compromise the jury's ability to remain impartial by implying that a defendant is dangerous, thus undermining the presumption of innocence. *See Cavan*, 337 Or at 448-49 (trying defendant in courthouse located in prison for crime committed in that prison created trial environment that was incompatible with jury impartiality). To be sure, anonymity may also imply a legitimate concern for juror privacy unrelated to the dangerousness of a defendant. But in a criminal case, there is a significant risk that members of the jury might infer that their names were being withheld to protect them from defendant or others acting on his behalf.[9]

---

[8] Similarly, under the United States Constitution, certain treatment of criminal defendants, like requiring them to wear prison clothes or appear in shackles before a jury, may suggest that the defendant is dangerous and thereby imply guilt in violation of the Sixth and Fourteenth Amendments, in the absence of sufficient justification. *See Estelle v. Williams*, 425 US 501, 504-05, 96 S Ct 1691, 48 L Ed 2d 126 (1976) (requiring defendant to wear prison clothes unconstitutional); *Illinois v. Allen*, 397 US 337, 344, 90 S Ct 1057, 25 L Ed 2d 353 (1970) (shackling defendant impairs the presumption of innocence but may be justified in compelling circumstances).

[9] Other courts have reached similar conclusions. *See, e.g., U. S. v. Ross*, 33 F3d 1507, 1519 (11th Cir 1994), *cert den*, 515 US 1132 (1995) ("An anonymous jury raises the specter that the defendant is a dangerous person from whom jurors must be protected, thereby implicating the defendant's constitutional right to a presumption of innocence.").

The state is correct that *voir dire* can be conducted without knowing the jurors' names, addresses, and employers, and we do not suggest that disclosure of such information always is necessary to achieve an impartial jury. However, knowing those facts obviously facilitates effective selection of an impartial jury and, in some cases, may be crucial. If McCoy is on trial, she will want to know if any of the prospective jurors are Hatfields.

Additionally, the state's argument that anonymous juries do not suggest guilt is essentially circular: If anonymity were the norm, jurors would view it as normal. That is true, of course, but the historical practice, in Oregon and elsewhere, is that juror identities generally have been known to litigants. The withholding of juror names has not been the norm. And, in this case, at least some prospective jurors had the personal experience on the very day of defendant's trial— based on participating in *voir dire* in the other trial—of their names and other indentifying information being disclosed as part of the jury selection process.

■■    We agree with the other state and federal courts that have held that anonymous juries are permissible only if the trial court "concludes that there is a strong reason to believe that the jury needs protection" and the court takes "reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected." *Paccione*, 949 F2d at 1192; *see also U. S. v. Fernandez*, 388 F3d 1199, 1244 (9th Cir 2004), *cert den*, 544 US 1043 (2005); *U. S. v. Ross*, 33 F3d 1507, 1519 (11th Cir 1994), *cert den*, 515 US 1132 (2005); *State v. Ross*, 174 P3d 628 (Utah 2007); *State v. Ivy*, 188 SW 3d 132 (Tenn 2006), *cert den*, 549 US 914 (2006) (all to similar effect). Under the first part of that test, the trial court must make a determination that the circumstances of the particular trial provide sufficient grounds to believe that jurors need the protection provided by anonymity. One federal court identified a nonexclusive list of factors to be considered in deciding when it is appropriate to withhold juror names:

"(1) the defendants' involvement with organized crime; (2) the defendants' participation in a group with the capacity to harm jurors; (3) the defendants' past attempts to

interfere with the judicial process or witnesses; (4) the potential that the defendants will suffer lengthy incarceration if convicted; and (5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation and harassment."

*Fernandez*, 388 F3d at 1244; *see also U. S. v. Branch*, 91 F3d 699, 724 (5th Cir 1996), *cert den*, 520 US 1185 (1997) (anonymity justified in light of extensive media attention). While we do not endorse any particular list of "factors," we believe that a trial court has the authority to protect jurors from the risk of physical harm, intimidation, or harassment—whether by parties, the press, or the public—by withholding juror names and other identifying information. But a determination that such a risk exists must be made on the facts of each case—and not on the basis of a generalized desire to protect the anonymity of all jurors in all cases in the interests of juror privacy.[10] *See State v. Tucker*, 259 Wis 2d 484, 498-99, 657 NW 2d 374, 381 (2003) (court erred in adopting practice of empanelling anonymous juries in all drug cases without individualized determination of need).

If grounds exist to empanel an anonymous jury, then the trial court may do so, but it must take reasonable precautions to ensure that the defendant's right to an impartial jury is protected. Those steps may differ depending on the circumstances at trial. In *U. S. v. Lawson*, 535 F3d 434 (6th Cir 2008), for example, the trial court mitigated the potentially adverse effect of anonymity on jury selection by permitting extensive *voir dire* regarding "each prospective juror's

---

[10] We note, in passing, another reason that has been offered for disclosure of juror identities, at least in the absence of specific grounds for maintaining anonymity. In *State v. Lewis*, 18 Or App 206, 524 P2d 1231 (1974), the Court of Appeals reversed a criminal conviction because the jury poll was conducted anonymously; that is, the jurors, who had voted 10-2 for conviction, did not have to indicate which of them voted for or against conviction. The court interpreted the statute authorizing the jury poll to prohibit an anonymous poll, because that would "permit[ ] each juror to effectively avoid his individual responsibility to the defendant and the public." *Id.* at 210. The court acknowledged that "fear of reprisal" might have been the basis for the jurors' desire for anonymity, but concluded that that concern was not supported by the record. The court stated, "If the institutions we profess to cherish are to continue we cannot cast them aside on every occasion on which it appears expedient to do so." *Id.* at 211. That argument against anonymity in the jury trial process was not asserted by defendant here, however, and we do not rely on it in this case.

community of residence, education, and type of work experience." *Id.* at 440. And to counter any suggestion that the use of an anonymous jury means that a defendant is dangerous and, by inference, guilty, trial courts have provided neutral explanations for withholding juror identities. *See Fernandez*, 388 F3d at 1245 (trial court took sufficient steps to protect defendant by offering jury neutral explanation for anonymity focused on juror confidentiality and suggestion that anonymous juries were routine); *Ross*, 174 P3d at 638 (trial court "should give anonymous jurors a plausible and nonprejudicial reason for not disclosing their identities that decreases the probability that the jurors would infer that defendant is guilty or dangerous"); *Lawson*, 535 F3d at 440 (trial court explained that anonymous jury was needed to ensure fair trial, given large number of defendants and prospective jurors).

■       Having set out the analysis to be followed to determine whether the use of an anonymous jury violates a defendant's Article I, section 11, right to an impartial jury, we return to the facts of this case. As noted, when defendant objected to the anonymous jury, the trial court announced that the Linn County circuit judges had agreed to withhold the names and other identifying information of prospective jurors and that the trial court would "follow that procedure" in defendant's case. The trial court stated that the procedure was adopted because some jurors in the past had objected to the disclosure of their names to litigants. The trial court also indicated that the procedure was being used in all jury trials in the county, although, as it turned out, juror names were disclosed in another criminal trial being conducted in the same courthouse on the same day as defendant's trial. The trial court did not explain to the jurors why they were not allowed to disclose their names during *voir dire*, nor did the court give any neutral explanation, either before trial or as part of the jury instructions, for the anonymous jury procedure.

■       This court's standard of review of a trial court's denial of a motion for a new trial depends on the nature of the alleged trial court error. When a party asserts that the trial

court erred in ruling on a matter that is committed to the discretion of the trial court, we review for abuse of that discretion. *See, e.g., Farrar*, 309 Or at 158 (reviewing trial court's decision to shackle defendant during trial for abuse of discretion). However, when the alleged irregularity at trial is based on a matter of law, we review for legal error. *See Bennett v. Farmers Ins. Co.*, 332 Or 138, 151, 26 P3d 785 (2001) (so stating). Here, defendant argues that the trial court violated his right to an impartial jury under Article I, section 11, by empanelling an anonymous jury without making findings that the circumstances of his case justified withholding juror names and without taking steps to mitigate any adverse impact of that action, such as giving the jury a neutral explanation of the reason for the anonymous jury. Although defendant asserts at one point is his brief that the trial court "abused its discretion," his central argument is not that the trial court erred in exercising its discretion to empanel an anonymous jury, but rather that it failed to exercise discretion at all.[11] In our view, that is a legal argument that defendant was denied his Article I, section 11, right to an impartial jury.

We agree with defendant that the trial court did not make any findings that would support the use of an anonymous jury in this case. Because, for the reasons discussed above, Article I, section 11, permits an anonymous jury only when the trial court finds that the circumstances of a particular case justify that practice and takes steps to mitigate any prejudice to defendant, we conclude that the trial court erred.

■ Having determined that the trial court erred, we must now decide if that error was harmless.[12] An error is harmless if there is little likelihood that it affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). As discussed above, the use of an anonymous jury can cause

---

[11] If the trial court had made a determination that the circumstances of defendant's case justified the use of an anonymous jury and had taken steps to ensure defendant's right to an impartial jury—and had defendant been convicted and asserted on appeal that the anonymous jury violated his Article I, section 11, rights—then we would review the trial court's ruling under an abuse of discretion standard.

[12] We note that the state has not argued that, if the trial court erred in empanelling an anonymous jury, that error nevertheless was harmless.

prejudice to a defendant by suggesting to jurors that the defendant may be dangerous and, by extension, guilty. *See Cavan*, 337 Or at 448 (impression of dangerousness may imply guilt of defendant and violate right to trial by impartial jury). That implication undermines the presumption that the defendant is innocent. The possibility that jurors might draw such an implication was heightened in this case because a number of prospective jurors had participated in standard *voir dire*, where they had disclosed their names, addresses, and employers, on the same day in another courtroom. Moreover, the risk that the use of an anonymous jury may have prejudiced the defendant was particularly great in this case. The indictment charged two sexual offenses arising out of a single incident. There was no physical evidence of abuse and there were no witnesses to the alleged abuse, other than defendant and the victim. Much of the trial testimony revolved around the credibility of both defendant and the victim. In contrast to cases in which there is physical evidence of harm, expert testimony regarding DNA or other evidence linking defendant and victim, or other witnesses who provide admissible independent testimony to support the state's case, this case, in large part, turned on whether the jury believed defendant or the victim.

In the circumstances of this case, the unexplained use of an anonymous jury created too great a risk that the jury may have believed that defendant was dangerous—and, therefore, that he was more likely to be guilty, denying defendant the right to a trial by an impartial jury. The error was not harmless, and defendant is entitled to a new trial.[13]

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

[13] Because we reverse the judgment of conviction on the anonymous jury issue, we do not reach defendant's claim that the use of metal detectors also violated his right to an impartial jury in violation of Article I, section 11. Similarly, because we decide this case under the Oregon Constitution, we do not address defendant's federal constitutional claims.